2023 IL App (2d) 220340-U
No. 2-22-0340
Order filed December 5, 2023

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Lake County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 21-CF-935 |
| GIOVANNI M. SMITH, | ) ) ) | Honorable Patricia S. Fix, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE JORGENSEN delivered the judgment of the court.
Presiding Justice McLaren and Justice Birkett concurred in the judgment.

**ORDER**

¶ 1   *Held*:   Defendant's arguments raising plain-error, evidentiary error, ineffective-assistance of counsel, and as-applied unconstitutionality of a statute fail. We affirm.

¶ 2   After a jury trial, defendant, Giovanni M. Smith, was convicted of armed habitual criminal (720 ILCS 5/24-1.7 (West 2020)) and unlawful use of a weapon by a felon (720 ILCS 5/24-1.1(a) (West 2020)). Defendant was present for trial but did not appear on the day that the jury returned the verdicts. He was sentenced *in absentia* to 21 years' imprisonment for the armed habitual criminal conviction. Defendant appeals, challenging: two of the trial court's evidentiary rulings and his counsel's effectiveness regarding those rulings; the court's decision to refuse a limiting

instruction; and the constitutionality of the armed habitual criminal statute as applied to him. For the following reasons, we affirm.

¶ 3                                    I. BACKGROUND

¶ 4                              A. Pretrial Motions and Rulings

¶ 5      On July 4, 2021, dispatch informed police officers that a 911 call was received, claiming that a man in a turquoise shirt possessed a weapon, may have discharged the weapon, and drove off in a vehicle with two female passengers. The caller also provided a description of the vehicle, including the license plate number. Officers located the vehicle and arrested defendant, the driver, who was wearing a turquoise shirt, after a loaded firearm was found under the cupholders in the center console between the front driver and passenger seats.

¶ 6      The three-count indictment charged armed habitual criminal and two counts of unlawful use of a weapon by a felon (one of these counts was later dropped). With respect to armed habitual criminal, the indictment specified the predicate felonies as: (1) manufacture or delivery of a controlled substance, a class 1 felony, in case No. 10CF640; and (2) unlawful use of a weapon by a felon, in case No. 12CF1528. The parties later entered various stipulations, including that defendant had "two qualifying felony convictions in the State of Illinois that satisfy the element of prior convictions for the charge of armed habitual criminal." A similar stipulation was entered concerning the charge of unlawful use of a weapon by a felon.

¶ 7      Prior to trial, both the State and defendant filed various motions *in limine*. Relevant to this appeal, the State moved to introduce, under the excited-utterance exception to the hearsay rule, the contents of a 911 telephone call made by Daryl Steele on July 4, 2021. Ill. R. Evid. 803(2) (eff. Sept. 28, 2018) (allowing admission of a statement relating to "a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition"). The

State argued that Steele's call was in response to the startling event of seeing a man jump out of a car with a gun and chase another person, then return to the car and drive off. The State noted that Steele lacked time to fabricate the statements and would be subpoenaed for trial. Defendant objected that the caller was calm and the report was unreliable, as the caller reported hearing gunshots, but there was no evidence (no casings found, no gunshot residue found on defendant's hands, and his fingerprints were not found on the gun) to corroborate that statement. After a hearing, the court granted the State's motion. It reduced the length of the call, however, finding it admissible substantively as an excited utterance from the start of the call to the 2-minute, 24-second mark.

¶ 8    Defendant moved *in limine* to prohibit the State from eliciting testimony from police officers about the information they received from dispatch. Defendant argued that the evidence was inadmissible hearsay because it tended to prove that defendant was the individual who possessed the gun, which was sole issue in controversy for the jury to decide. Further, defendant argued, the evidence should not be admitted for purposes of explaining the investigative steps the officers took leading to defendant's arrest because defendant would not be challenging the legality of the traffic stop. As such, defendant argued, the State needed to demonstrate only that the officers were on duty, received a radio call, and, as a result of the call, conducted the traffic stop.

¶ 9    The court, noting that it had granted the State's motion to admit the 911 call substantively, denied defendant's motion. In announcing its decision, the court found that the information was admissible not for the truth of the matter asserted, but to explain the officers' course of conduct for stopping that particular vehicle. The court explained that, if the testimony at trial was different or other circumstances changed, defendant could again object and, further, that there would be "curative instructions given to the jury that this is not for the truth of the matter asserted. I would

do a limiting instruction prior to his testimony if that's what the defense was asking for, which you can do as well." The court's April 12, 2022, order provided, "subject to further objections at trial, and depending on trial testimony, the responding officers shall be permitted to testify to their course of conduct to explain to the jury why they effectuated the traffic stop at issue, to include that they received a call from dispatch for a man with a gun, that identifiers were provided, and the car description and license plate provided."

¶ 10                                B. Trial

¶ 11    At trial, Steele testified that, on July 4, 2021, he was at a barbeque in North Chicago with family, including children. The party started early that day, and he drank alcohol and smoked marijuana there. In the afternoon, Steele saw a man with a gun exit a burgundy Chevy Tahoe sport utility vehicle (SUV) and run off across the street. Steele "panicked" and called 911 to report what he saw, and he described the SUV, the license plate, and the individual's clothing.

¶ 12    A portion of the 911 call was played for the jury. In it, Steele reported seeing a man chase someone with a gun, he described the vehicle and license plate number, he explained that the man was wearing a turquoise shirt and, at one point, he stated that he "just heard a gunshot."

¶ 13    Three North Chicago police officers who responded to the dispatch call testified. Officer Matthew Decowski testified, in part,

> "STATE: At some point were you contacted by dispatch with regard to a shots fired call?
>
> DECOWSKI: Yes.
>
> STATE: And what information *without getting into what was said*, what information did you have as far as a possible incident that occurred?

DECOWSKI: Initially dispatch provided us with information of a subject with a gun in the area of 24th Street and Sherman Avenue, and that subject had chased another subject and then fled in a vehicle.

STATE: Did dispatch provide you with the clothing that the suspect was wearing?

DECOWSKI: Yes.

STATE: Did dispatch provide you with the car type that the suspect was driving?

DECOWSKI: Yes.

STATE: Did dispatch provide you with a license plate?

DECOWSKI: Yes.

STATE: At some point did you locate that vehicle?

DECOWSKI: I did.

STATE: What did you do when you located that vehicle?

STATE: When I located the vehicle, I pulled behind it and conducted a high-risk or a felony traffic stop.

STATE: Explain why you conducted a high-risk or felony traffic stop?

DECOWSKI: We conducted a high-risk felony stop due to the fact of the possibility of a firearm being inside the vehicle. It's a safer position for officers and the suspect vehicle to be in." (Emphasis added.)

¶ 14    According to Decowski, when he pulled over the SUV, defendant was driving, although he was not the vehicle's owner, and two female passengers were in the car. Defendant was wearing a teal shirt and black pants. Decowksi was wearing a body camera, and a portion of that video was played for the jury wherein he asked defendant where he got the gun. Defendant said it was not his, and Decowski stated that guns do not just appear in cupholders. Defendant then answered

that "it ain't my pipe." Decowksi testified that, in his experience and training, common terms or lingo for guns include the word "pipe."

¶ 15　Next, Officer James Ramirez testified, in part,

> "STATE: At approximately 7:39 p.m., did you receive a call that you responded to?
>
> RAMIRIEZ: There was a call put on the radio of shots fired, but I was responding as cover.
>
> ***
>
> STATE: And based on the information that you received from that call, what did you do?
>
> RAMIREZ: So I responded—relocated from I don't recall where I was at in the city at the moment. I just started relocating to the call's direction where the shots fired occurred.
>
> STATE: Okay. So based on the information that you had, there had been a 9-1-1 call about—was there—did you have information that there was a person with a gun?
>
> RAMIREZ: It was a call of shots fired and a subject fleeing in a red SUV vehicle."

¶ 16　According to Ramirez, defendant provided permission to search the vehicle. In doing so, Ramirez found a firearm underneath the cup holders in the center console. Ramirez also found a vape pen and an object for grinding marijuana.

¶ 17　Finally, Officer Timothy Zamora testified that "[t]he call was for a man with a gun, possible shots fired." After the gun was found, Zamora secured it and placed it into evidence. The weapon had one bullet in the chamber and six bullets in the magazine. Ultimately, no fingerprints or DNA were found on the weapon.

¶ 18    In a phone call from jail, also admitted at trial, defendant called someone who then asked defendant what had happened.  He responded, ultimately, that "they" had "bumped me off my pipe."

¶ 19    During the jury instruction conference, defendant offered an instruction not found in the Illinois Pattern Jury Instructions (IPI).  Specifically, he offered a non-IPI instruction, requesting that, because the court had ruled that certain testimony from the officers could be introduced only for course-of-conduct purposes, the court instruct the jury,

> "Evidence by way of police officer testimony of what they were told by dispatch and other officers has been received for a limited purpose, and should not be considered for any other purpose than to explain why the vehicle operated by the Defendant was stopped."

¶ 20    The State objected that the instruction, in part because,

> "The police officers' testimony is largely based on substantive evidence, evidence of what they observed, what they did, and it's based on the 911 call which is in evidence as substantive evidence per a prior ruling.  It was also authenticated by Daryl Steele.  So at this point after the evidence has closed it is impossible to parse out and separate what should be considered by the jury to be limited or not. This objection and request should have been made at the time the evidence was entered into evidence."

The trial court expressed that it was concerned that the non-IPI instruction highlighted "one particular piece of evidence over other pieces of evidence, even over other testimonial pieces of evidence, and I have a concern about that type of an instruction."  Ultimately, the court refused the instruction.

¶ 21    In closing argument, the State referenced that defendant chased someone with a gun. Further, it played the 911 call in opening and rebuttal arguments.  Finally, the assistant State's Attorney commented, "Now, you heard in the 911 call some indication that—some suggestion that Daryl Steele may have heard a shot.  It was the Fourth of July.  Maybe that was a firework.  There's not any evidence and there doesn't need to be any evidence to find the defendant guilty of these two crimes that there was a shot actually fired.  But it's clear that the defendant was prepared to fire this gun."

¶ 22    On August 4, 2022, the jury found defendant guilty of the charges.

¶ 23                          C. Posttrial Motion and Sentencing

¶ 24    Defendant moved for a new trial on multiple grounds, including the court's denial of his proposed non-IPI jury instruction.  The motion was denied.  On September 7, 2022, the court sentenced defendant *in absentia* to 21 years' imprisonment for armed habitual criminal (the unlawful-use-of-a-weapon conviction merged into that count).  The court denied a motion to reconsider sentence filed on defendant's behalf.  Defendant appeals.[1]

¶ 25                                II. ANALYSIS

¶ 26    On appeal, defendant challenges: two of the trial court's evidentiary rulings, as well as the effectiveness of his trial counsel with respect to those rulings; the court's decision to refuse his proffered limiting instruction; and the constitutionality of the armed habitual criminal statute, as applied to him.

------

[1]On January 9, 2023, we granted defense counsel's motion to dismiss this appeal without prejudice until defendant returned to the jurisdiction.  On April 6, 2023, upon defendant's return to custody, we granted counsel's motion to reinstate the appeal.

¶ 27    The first three issues are related. Namely, defendant notes that the charges did not involve endangerment or discharging a weapon. However, the 911 call referred to shots fired and defendant chasing someone, three police officers testified that dispatch referred to shots fired, and, in closing argument, the State referred to shots fired and played the 911 call two more times. In addition, the court refused defendant's proposed limiting instruction. Accordingly, he argues that, where the jury heard and was allowed to substantively consider *repeated* evidence suggesting other serious uncharged acts, including firing the gun, his due process right to a fair trial was violated. For the following reasons, we disagree.

¶ 28                    A. Admissibility of the 911 Call

¶ 29    Defendant argues first that the court erred in its manner of admitting the 911 call. He contends the court should have *redacted* the call to remove any reference to chasing someone with a gun and shots fired, because there were no charges that shots were fired, no evidence suggesting that shots were fired, the statements were highly prejudicial, and they held no probative value to the State's case. If the call could not have been redacted to remove the other-crimes references, defendant asserts, it should have been excluded. Defendant acknowledges that, according to Illinois Rule of Evidence 803(2) (eff. Sept. 28, 2018), an excited utterance is not excluded by the hearsay rule, even when, as here, the declarant is available as a witness. Yet, defendant argues that all the State needed in this case was to connect defendant with a gun, so Steele's statements in the 911 call that he heard a gunshot and saw the alleged perpetrator chasing someone with a gun were irrelevant, held no probative value, and were highly prejudicial, particularly where the State placed undue emphasis on the evidence in closing argument. Defendant contends that, given Steele's testimony at trial, the 911 call was superfluous and served no purpose other than to unnecessarily bring into evidence prejudicial other-crimes statements. We disagree.

¶ 30    Preliminarily, defendant concedes that, although he objected to the State's motion to admit the 911 call as an excited utterance, he did not request that the court redact the call to remove references to chasing someone down the street and to shots being fired.  Further, he also did not seek to exclude the 911 call if those redactions were impossible, nor did counsel include this issue in the motion for a new trial.  Thus, defendant requests that we consider this issue for first-prong plain error and ineffective assistance of counsel.

¶ 31    Generally, a defendant must object at trial and raise an alleged error in a posttrial motion to preserve the issue for appeal and avoid forfeiture.  *People v. Belknap*, 2014 IL 117094, ¶ 66. However, we may excuse a defendant's procedural default if there exists plain error affecting substantial rights.  Ill. S. Ct. R. 615(a) (eff. Jan. 1, 1967); see also *People v. Clark*, 2016 IL 118845, ¶ 42.  Specifically, we may address an unpreserved issue where a clear or obvious error occurred and either: (1) the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error (prong one), or (2) the error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence (prong two).  *People v. Piatkowski*, 225 Ill. 2d 551, 565 (citing *People v. Herron*, 215 Ill. 2d 167, 186-87 (2005)).  Under either prong, the burden of persuasion remains with the defendant.  *Herron*, 215 Ill. 2d at 187.

¶ 32    Again, defendant argues that the error raised here should be reviewed under prong one. Although the initial step of the plain-error analysis ordinarily involves determining whether there was, in fact, a clear or obvious error (*Piatkowski*, 225 Ill. 2d at 565), we need not resolve whether there was an error under prong one if the evidence was not closely balanced. *People v. White*, 2011 IL 109689, ¶ 148.  Indeed, "[w]here the only basis proffered for plain-error review is a claim that the evidence is closely balanced, an assessment of the impact of an alleged evidentiary error

is readily made after reading the record. When it is clear that the alleged error would not have affected the outcome of the case, a court of review need not engage in the meaningless endeavor of determining whether error occurred." *Id.*

¶ 33 Here, we disagree that the evidence was closely balanced. Defendant points out that the State's case was purely circumstantial, as Steele did not identify defendant as the person he saw with the gun, no fingerprints or DNA were found on the gun, and the gun was hidden in a car that defendant did not own. However, to assess whether evidence is closely balanced, we conduct a "qualitative, commonsense assessment" of it within the context of the case and while considering the substantive elements of the charged offense. *People v. Sebby*, 2017 IL 119445, ¶ 53. As defendant was charged with armed habitual criminal, the State needed to establish only that defendant (1) possessed a firearm, and (2) was previously convicted of two prior qualifying offenses. 720 ILCS 5/24-1.7(a) (West 2020) ("A person commits the offense of being an armed habitual criminal if he *** possesses *** any firearm after having been convicted a total of 2 or more times of any combination of the following offenses").[2] Defendant stipulated to the second element, *i.e.*, that he was previously convicted of two prior qualifying offenses. As to the first

---

[2]Although not phrased as such in the statute, the jury here was instructed that, for armed habitual criminal, the State had to demonstrate that defendant "knowingly or intentionally possessed a firearm." For unlawful use of a weapon by a felon, the jury was instructed, per the statute, that the State needed to establish "knowing" possession of a firearm and a previous felony conviction. 720 ILCS 5/24-1.1(a) (West 2020) ("It is unlawful for a person to knowingly possess on or about his person *** any firearm or any firearm ammunition if the person has been convicted of a felony under the laws of this State or any other jurisdiction.").

element, *i.e.*, possession, the evidence was not closely balanced. True, Steele did not identify defendant as the person he saw with the weapon, defendant's fingerprints and DNA were not found on the weapon, and he was not the registered owner of the vehicle. However, Steele testified that, on July 4, 2021, he saw a man with a weapon. Further, he described the vehicle the man was driving as a burgundy SUV and provided the vehicle's license plate number. In the 911 call, Steele described the man as wearing a turquoise shirt. When, shortly thereafter, police pulled over the described vehicle, defendant was driving, wearing a turquoise shirt, and he was the only man in the vehicle. A loaded firearm was found hidden under the cupholders in the driver's seat console where he had been sitting. Further, after police found the weapon and Decowski asked him where he got the gun, defendant stated that it was not his "pipe," which Decowski explained is a common term meaning "gun." Defendant's jail phone call was also played, wherein he explained to a listener that "they" had "bumped" him off his "pipe." Although defendant points out that a vaping pen was also found in the vehicle, a commonsense assessment of the context of his statements does not render closely balanced the question whether he was referring to the vaping pen, as opposed to the gun, when he mentioned the "pipe." Collectively, the evidence of defendant's possession of a firearm and two qualifying convictions was not closely balanced. Accordingly, the court's admission of a non-redacted portion of the 911 call, even if error, did not threaten to tip the scales of justice against defendant. As there is no prong-one plain error, we honor the forfeiture.

¶ 34 We note that defendant also raises an ineffective-assistance-of-counsel claim, arguing that counsel was ineffective for failing to argue that the 911 call should have been excluded or redacted due to the prejudicial reference to other crimes. Defendant contends that counsel's unreasonable performance prejudiced him, because the jury should not have been allowed to hear allegations that he may have chased someone or fired the gun, and the prejudice was compounded by the

*repetition* of those allegations at trial by the police officers, replaying the 911 call during closing and rebuttal arguments, and the State's reference to shots fired during the closing argument. Defendant argues that counsel's errors allowed the jury to potentially convict him based on prejudicial, uncharged other acts.

¶ 35    We reject this claim, however, because, to succeed, an ineffective-assistance claim must establish not only deficient performance, but prejudice. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); see also *People v. Brown*, 2023 IL 126852, ¶ 11 ("[t]o prevail on an ineffective-assistance claim, a criminal defendant must show both that (1) counsel's performance was deficient and (2) the deficient performance prejudiced defendant such that he was deprived of a fair trial."). To establish prejudice, a defendant must generally demonstrate that, but for counsel's deficient performance, there is a reasonably probability that the result of the trial would have been different. *Strickland*, 466 U.S. at 687; *Brown*, 2023 IL 126852, ¶ 28 (noting that claims of ineffective assistance of counsel require a showing of actual prejudice, not mere speculation of prejudice). As noted above, however, the evidence of defendant's possession of the firearm and prior convictions was not closely balanced and, thus, there is no reasonable probability that the result of trial would have been different if counsel had raised additional objections to the 911 call. Thus, in the absence of prejudice, defendant's ineffective-assistance claim fails. *People v. Simpson*, 2015 IL 116512, ¶ 35 (failure to establish *either* deficient performance or prejudice defeats an ineffective-assistance claim).

¶ 36                          B. Police Officers' Testimonies

¶ 37    Next, defendant argues that the court erred in allowing the police officers to testify to specific details of the dispatch call, including that dispatch told them shots had been fired. Defendant asserts that the comments from dispatch about the call were hearsay, admissible under

an exception only to show investigative steps and the officers' course of conduct. However, he argues, course-of-conduct testimony is allowed only where necessary to fully explain the State's case to the jury. Here, he contends, three officers testified to everything dispatch told them, including the irrelevant and prejudicial statements that a suspect was chasing someone and shots were fired. Defendant notes that there was no issue concerning why the officers pulled over the car he was driving, and, so, the fact that the stop was "high risk" was irrelevant to the State's case. Further, he contends that there was no concern that the jury would be confused as to why they made the traffic stop, therefore, the details that dispatch relayed to the officers were irrelevant and prejudicial. Defendant notes that, prior to trial, he moved *in limine* to prohibit this testimony as inadmissible hearsay. Defendant argues that the court erred in denying that motion, because the State went far beyond offering dispatch's statements to explain the officers' actions; rather, it repeated the prejudicial and unnecessary statements through testimony from three separate officers. Defendant relies on *People v. Jura*, 352 Ill. App. 2d 1080 (2004), as being "nearly identical," and notes that the court in *Jura* concluded there was reversible error where three police officers had testified to contents of a radio call and the State relied on the statements in closing argument. Here, defendant argues, the officers' testimony should have been limited to only that they were on duty, received a call, and conducted a traffic stop based on that call. Defendant concedes that, although he raised this issue in a motion *in limine*, it was not included in his posttrial motion. Thus, he again requests we review the issue for first-prong plain error and ineffective assistance of counsel.

¶ 38    Again, although the initial step of the plain-error analysis ordinarily involves determining whether there was, in fact, a clear or obvious error (*Piatkowski*, 225 Ill. 2d at 565), we need not resolve whether there was an error under prong one if the evidence was not closely balanced.

*White*, 2011 IL 109689, ¶ 148. For the same reasons described above, the evidence was not closely balanced and, so, even if admitting the officers' testimony was error, defendant's prong-one, plain-error argument fails, and we honor the forfeiture.

¶ 39 We wish to note, however, that we find this case distinguishable from *Jura*. In *Jura*, three officers repeatedly testified to hearsay information received from dispatch, including not only the type of crime reported, but the detailed description they received of the suspect, including his tattoo of a teardrop under his eye, and that the defendant matched the description received. *Jura*, 352 Ill. App. 3d at 1082-84. The State also relied on the hearsay information in opening and closing statements. *Id.* at 1088-89. The court acknowledged that, where necessary to fully explain the State's case to the trier of fact, hearsay may be admissible for the limited purpose of showing the course of a police investigation. *Id.* at 1085. However, the court concluded it was not necessary to admit the hearsay received from dispatch, where the defendant was charged with unlawful use of a weapon by a felon and the three officers testified that they *witnessed* the defendant remove a handgun from his waistband and throw it in a garbage can. *Id.* at 1084, 1087. The court determined that the State's use of the evidence went beyond merely explaining course of conduct and, instead, the evidence was used substantively to establish the truth of the matter asserted, *i.e.*, that the defendant matched the hearsay description. *Id.* at 1087. Further, the court noted that, generally, under the investigative-steps exception, police officers should not testify to the contents of conversations and, moreover, that the fundamental reason for excluding hearsay is the lack of an opportunity to cross-examine the declarant. *Id.* at 1085, 1087. Where neither the radio call nor the "concerned citizen" caller were introduced or, consequently, subjected to adversarial testing, the officers' hearsay testimony was deemed inadmissible. *Id.* at 1089, 1091.

¶ 40    Here, defendant acknowledges that the declarant was available. However, he argues that the prejudice was not the absence of the declarant, but, rather, the use of course-of-conduct testimony to repeat inadmissible other-crimes statements, particularly where there was no need to explain why the officers conducted a high-risk stop. We disagree. Considering all circumstances, the court's decision cannot be considered an abuse of discretion. *People v. Ruback*, 2013 IL App (3d) 110256, ¶ 24 (on appeal, the trial court's decision to admit evidence is reviewed for an abuse of discretion). When it made the decision, the court was aware that, unlike in *Jura*, the 911 call and Steele, the caller, would be available for adversarial testing and, in context, the testimony might explain why multiple officers arrived to conduct a "high-risk felony stop" of that particular vehicle. See *People v. Banks*, 237 Ill. 2d 154, 181 (2010) (noting that an out-of-court statement offered not to prove the truth of the matter asserted but, rather, to explain the investigatory procedure followed is proper). Further, unlike in *Jura*, the officers did not personally witness defendant holding the weapon. Importantly, when questioning Decowski here, the assistant State's Attorney specifically asked him to describe the information he received from dispatch "without getting into what was said." None of the officers, when questioned, described the contents of the call, in terms of the specific description of the person seen with a gun. Also, again unlike in *Jura*, none of the officers testified that defendant matched the description provided to dispatch. Rather, they explained only generally that they were told shots were fired, a person with a gun had chased someone and was fleeing in a red SUV, and they received a description of the person and the vehicle. And while the State mentioned in closing shots fired, it also explicitly told the jury that there was no evidence that shots were actually fired and that the sound might have been July 4 fireworks. In sum, we disagree with defendant that this case is nearly identical to *Jura*, such that its holding applies here, and his plain-error claim fails.

¶ 41    Further, as we do not find the officers' testimony was erroneous or prejudicial, defendant's ineffective-assistance claim similarly fails. *Simpson*, 2015 IL 116512, ¶ 35.

¶ 42                                C. Limiting Instruction

¶ 43    In a related argument, defendant next contends that, even if it was acceptable for the officers to testify to the contents of the dispatch call, the testimony should not have been admitted substantively. He notes that, when the court initially denied his motion *in limine*, it agreed that the testimony should be considered only as course-of-conduct evidence and, accordingly, that the jury would receive curative instructions. However, when defendant submitted a curative instruction, the court refused it. Defendant contends the refusal was error because, when a court admits an out-of-court statement for the limited purpose of explaining the steps of an investigation, it "must" instruct the jury that the statement is not to be accepted for the truth of its contents. Further, he argues that the fact that the instruction was a non-IPI instruction should not have precluded its use, because there does not exist an IPI instruction for this type of testimony and, in any event, his proffered instruction was similar to other IPI limiting instructions. By allowing the statements to come in substantively without a limiting instruction, the jury was allowed to consider inadmissible hearsay and other-crimes evidence. Defendant argues that, contrary to the State's assertion, the erroneous admission of this hearsay without limitation was not harmless because the repeated and inflammatory nature of the uncharged and unfounded statements that shots had been fired denied him due process.

¶ 44    Defendant preserved this issue by raising it at trial and in his posttrial motion. Accordingly, we consider whether the court abused its discretion in refusing the instruction. See, *e.g.*, *People v. Jenkins*, 2021 IL App (1st) 200458, ¶ 25 (an appellate court reviews for an abuse of discretion a trial court's refusal to tender a non-pattern jury instruction). A court abuses its discretion if its

decision is arbitrary, fanciful, or unreasonable (*People v. Donoho*, 204 Ill. 2d 159, 182 (2003)), or where the jury instructions provided are unclear, misleading, or are not justified by the evidence and the law (*People v. Lovejoy*, 235 Ill. 2d 97, 150 (2009)).

¶ 45    Under the specific circumstances in this case, the court did not unreasonably refuse the proffered instruction.  Although defendant is correct that the officers' testimony was to be considered for only a limited purpose and the court expressed prior to trial that it would provide curative instructions to the jury, the court reasonably declined to do so when requested. Preliminarily, we note that, pretrial, the court explained that it would provide the jury with a limiting instruction prior to the officers' testimony, "if that's what the defense was asking for." The written order also specified that the ruling was "subject to further objections at trial and depending on trial testimony."  Defendant did not, at trial, request a limiting instruction be provided to the jury before or during the officers' testimony.

¶ 46    Moreover, defendant relies on *People v. Trotter*, 254 Ill. App. 3d 514 (1993), where the court stated that, when investigatory-procedure testimony is introduced, "the trial court *must* instruct the jury that the testimony was introduced for the limited purpose of explaining what caused the police to act, and that they were not to accept the statement as true." (Emphasis added.) *Id.* at 527-28.  The *Trotter* court continued that, where no such instruction is provided, "it cannot be presumed that the jury's use of the evidence was limited to non-hearsay purposes."  *Id.* However, even setting aside the State's position that *Trotter*'s analysis was flawed, we do not agree that it reflects an abuse of discretion *here*.  Under the unique circumstances here, when viewing the evidence collectively, it is apparent that the officers' testimony, although admissible for a limited purpose, was cumulative to portions of the 911 call and/or Steele's testimony, which the jury heard without limitation.  Thus, here, the jury was *already* permitted to consider the

evidence for nonhearsay purposes. Accordingly, we do not think unreasonable the court's decision to decline a limiting instruction at the close of trial, where it likely would have created confusion and possibly mislead the jury about the degree to which it could consider the same evidence.

¶ 47    Further, as the State argues, even if the court should have provided the limiting instruction, the error was harmless beyond a reasonable doubt. See, *e.g.*, *People v. Rush*, 401 Ill. App. 3d 1, 16-17 (2010) (error is harmless if there is no reasonable possibility that, absent the error, the verdict would have been different); see also *People v. Irwin*, 2017 IL App (1st) 150054, ¶ 26 (failure to provide limiting instruction harmless if, given the facts of the case, the result would have been the same, even if the instruction had been offered). The State bears the burden of establishing that an alleged error was harmless beyond a reasonable doubt. *Irwin*, 2017 IL App (1st) 150054, ¶ 26. In determining whether an error was harmless beyond a reasonable doubt, we may,

"(1) focus on the error to determine whether it might have contributed to the conviction;

(2) examine the other properly admitted evidence to determine whether it overwhelmingly supports the conviction; or

(3) determine whether the improperly admitted evidence is merely cumulative or duplicates properly admitted evidence." *Id.*

¶ 48    Here, the alleged error in refusing the limiting instruction did not contribute to the conviction, the properly-admitted evidence overwhelmingly supports the conviction, and the allegedly improper hearsay introduced by the officers for which no limiting instruction was provided was duplicative of properly-admitted evidence. As previously discussed, the jury had ample evidence that defendant was guilty of the elements of armed habitual criminal based upon: his stipulated prior convictions; Steele's testimony; Steele's 911 call, describing seeing a man in a turquoise shirt with a gun and describing the vehicle and license plate number; the officers'

testimony that, when they pulled over the vehicle with that license plate, defendant was the only male in the car, was driving, was wearing a turquoise shirt, and a firearm was found under the cupholders next to where defendant was seated; defendant's statement that it was not his "pipe," which Decowksi testified is a common word for "gun;" and defendant's telephone call, in which he explained "they" had "bumped him" off of his "pipe." The officers' testimony for which no instruction was provided, *i.e.*, about someone chasing someone and shots fired, was also duplicative of evidence received without limitation through the 911 call. Accordingly, we reject defendant's arguments that the absence of a limiting instruction requires reversal.

¶ 49    We note that defendant also argues that the aforementioned errors cumulatively deprived him of his right to a fair trial. According to defendant, the 911 call, testimony from three different police officers, use of the unredacted 911 call twice in closing and rebuttal arguments, reminder to the jury in closing that the police responded to "shots fired," and failure to instruct the jury that it could not consider substantively the course-of-conduct hearsay statements, all served to require a new trial. However, we have rejected defendant's claims of error. Therefore, "because none of the claims constituted error, there is no error to accumulate and no cumulative error." *People v. Saulsberry*, 2021 IL App (2d) 181027, ¶ 90.

¶ 50                    D. Constitutionality of Armed Habitual Criminal Statute

¶ 51    Defendant next argues that, under the test established in *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. ___, 142 S. Ct. 2111 (2022), for evaluating gun laws, the armed habitual criminal statute is unconstitutional as applied to him. He contends that the statute unconstitutionally criminalizes his simple possession of a gun based on prior convictions of "two *nonviolent* felonies" (emphasis in original.) and that the State cannot prove that there exists a historical tradition of prohibiting persons with nonviolent felonies from possessing firearms.

Accordingly, defendant asks us to conclude that the statute is unconstitutional as applied to him and reverse his conviction. We decline to do so.

¶ 52 Preliminarily, we note that defendant concedes that he raises his as-applied constitutional challenge for the first time on appeal. The State, noting that as-applied constitutional challenges are fact specific and require adequate development for purposes of review (see, *e.g.*, *People v. Thompson*, 2015 IL 118151, ¶ 37), argues that defendant's failure to develop this argument below should result in forfeiture. We disagree. As defendant notes, our supreme court has recognized a narrow exception to the general rule that a defendant must present an as-applied constitutional challenge to the trial court so as to create a sufficiently developed record. *People v. Holman*, 2017 IL 120655, ¶ 32, *overruled on other grounds by People v. Wilson*, 2023 IL 127666, ¶ 42. Where, as here, the record is sufficiently developed to address defendant's claim, we will not find the issue forfeited. Defendant's arguments do not require factual development because they are based on caselaw, the statute, and the qualifying offenses as charged by the State in the indictment against him. Although the State notes that defendant seeks to differentiate between violent and nonviolent felonies, and, therefore, the record should be developed as to whether his underlying convictions involved violent circumstances, as discussed later in this decision, we reject the notion that there is a valid distinction between the two for purposes of our analysis and, therefore, we may address defendant's arguments without further record development.

¶ 53 Turning to the merits of defendant's argument, we start with the presumption that a statute is constitutional. *Allegis Realty Investors v. Novak*, 223 Ill. 2d 318, 334 (2006). The burden on defendant to establish constitutional invalidity is "a formidable one, and this court will uphold a statute's validity whenever it is reasonably possible to do so." *Id.*; see also *In re Lakisha M.*, 227 Ill. 2d 259, 263 (2008) (if reasonably possible, a reviewing court must construe a statute so as to

affirm its constitutionality). Moreover, an as-applied constitutional challenge requires a showing that the law is unconstitutional as it applies to the specific facts and circumstances of the challenging party. *People v. Harris*, 2018 IL 121932, ¶ 38. "All as-applied constitutional challenges are, by definition, dependent on the specific facts and circumstances of the person raising the challenge." *Id.* ¶ 39. An as-applied constitutional challenge presents a legal question that is reviewed *de novo*. *People v. Kitch*, 2019 IL App (3d) 170522, ¶ 49.

¶ 54 Defendant argues that the armed habitual criminal statute, as applied to him, given the nonviolent nature of the predicate felonies used to convict him, is unconstitutional under *Bruen*. We disagree. As background, in *District of Columbia v. Heller*, 554 U.S. 570 (2008), the Supreme Court held that a series of laws violated the second amendment's protection of "the right of *law-abiding*, responsible citizens to use arms in defense of hearth and home." (Emphasis added.) *Id.*, 554 U.S. at 635. However, the *Heller* Court admonished lower courts that "nothing in [its] opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons[.]" *Id.*, 554 U.S. at 626-27. Later, in *McDonald v. City of Chicago*, 561 U.S. 742 (2010), the Court held that the second amendment's "right to keep and bear arms for the purpose of self-defense" applies to the states through the fourteenth amendment (U.S. Const., amend. XIV), but reiterated that its decision "did not cast doubt on such longstanding regulatory measures as 'prohibitions on the possession of firearms by felons and the mentally ill[.]' " *Id.*, 561 U.S. at 786, 789-91 (quoting *Heller*, 554 U.S. at 626-27).

¶ 55 Most recently, in *Bruen*, the Court considered whether "ordinary, *law-abiding* citizens have a *** right to carry handguns publicly for their self-defense." (Emphasis added.) *Bruen*, 597 U.S. at ___, 142 S. Ct. at 2122. The Court set forth the following test for assessing constitutionality under the second amendment:

"When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation. Only then may a court conclude that the individual's conduct falls outside the Second Amendment's 'unqualified command.' " *Bruen*, 597 U.S. at ___, 142 S. Ct. at 2129-30.

¶ 56    Initially, a court must ask whether the second amendment's "plain text" covers an individual's conduct. *Bruen*, 597 U.S. at ___, 142 S. Ct. at 2129-30. At this initial step, it is the burden of the defendant to show that the second amendment's plain text covers his or her conduct. See *Bruen*, 597 U.S. at ___, 142 S. Ct. at 2129-30. It is here that, if we follow a recent First District appellate court decision, defendant's constitutional claim fails. In *Baker*, the defendant raised an as-applied challenge to the unlawful-use-of-a-weapon-by-a-felon statute, and the court decided that, because he was a convicted felon, "*Bruen* just does not apply to him." *People v. Baker*, 2023 IL App (1st) 220328, ¶ 37. It summarized,

"The *Bruen* Court could not have been more clear that its newly[-]announced test applied only to laws that attempted to regulate the gun possession of 'law-abiding citizens,' and not felons like defendant. *Bruen*, 597 U.S. at ___, 142 S. Ct. at 2156 (the holding was limited to laws affecting 'law-abiding citizens'). Just in case a reader missed the first time that the court said it, the court repeated it 18 times. *Bruen*, 597 U.S. ___, 142 S. Ct. 2111 *passim* (the six justices in the majority repeated the phrase 'law-abiding' 18 times in their majority opinion and their concurrences). Further, Justice Kavanaugh in his concurrence quoted an earlier case that stated: ' " '[N]othing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons ***.' " ' *Bruen*,

> 597 U.S. at \_\_\_142 S. Ct. at 2162 (Kavanaugh, J., concurring, joined by Roberts, C.J.) (quoting *Heller*, 554 U.S. at 626-27 [     ]). Justice Kavanaugh's concurrence was joined by Chief Justice Roberts, and they both joined the six-justice majority opinion. Based on the plain, clear, and repeated language of the justices in the majority, defendant is simply outside the box drawn by *Bruen*." *Baker*, 2023 IL App (1st) 220328, ¶ 37.

¶ 57    Accordingly, and as the State urges, *Bruen* may reflect that "the people" referenced in the second amendment are "law-abiding" citizens. See also, *United States v. Jackson*, 69 F.4th 495, 501-06 (8th Cir. 2023); *United States v. Garrett*, 2023 WL 157961, at *2 (N.D. Ill. 2023); *United States v. Coleman*, 2023 WL 122401, at *2 (N.D. W.Va. 2023); *United States v. Medrano*, 2023 WL 122650, at *2 (N.D. W.Va. 2023); *United States v. Seiwert*, 2022 WL 4534605, *1 (N.D. Ill. 2022); *United States v. Ingram*, 623 F. Supp. 3d 660, 664 (D. S.C. 2022). If so, and as defendant concedes that he is a repeat convicted felon for purposes of the armed-habitual-criminal statute, he is not a "law-abiding" citizen afforded the same second amendment protections enjoyed by "the people" referenced in the second amendment.[3]

---

[3]Defendant asserts that the language from *Heller* reflecting that the longstanding prohibitions on the possession of firearms by felons are "presumptively lawful" is *dicta*. See, *e.g.*, *People v. Chairez*, 2018 IL 121417, ¶ 24. This argument, however, does not alter our decision. First, it was rejected by the Eleventh Circuit Court of Appeals in *United States v. Rozier*, 598 F. 3d 768, 770-71 (11th Cir. 2010) (stating that "to the extent that this portion of *Heller* limits the Court's opinion to possession of firearms by law-abiding and qualified individuals, it is not *dicta*" and that even "to the extent that this statement is [*dicta*], we shall still give it considerable weight"). Second, even if *dicta*, Illinois courts have credited the impact of *dicta* from the Supreme Court.

¶ 58    Nevertheless, even if we presume that, despite his status as a repeat convicted felon, defendant's conduct, *i.e.*, possession of a weapon, satisfies the first part of the *Bruen* test, it fails under the second.  Specifically, defendant argues that the qualifying convictions upon which his armed-habitual-criminal conviction rests (a drug conviction and prior conviction for unlawful possession of a weapon by a felon) were nonviolent, and there is no well-established and representative historical analogue for barring felons from possessing firearms, much less nonviolent felons.  We disagree.

¶ 59    Preliminarily, whether defendant's qualifying convictions were "nonviolent" is irrelevant, as the Supreme Court placed no qualifiers on the word "felons" in either *Heller* or *McDonald*.  See *Medina v. Whitaker*, 913 F. 3d 152, 159 (D.C. Cir. 2019) (observing that "[f]elonies encompass a wide variety of non-violent offenses, and we see no reason to think that the [United States Supreme] Court meant 'dangerous individuals' when it used the word felon" in *Heller*).  We also agree with the federal courts of appeal that have concluded that the country's historical tradition of firearm regulation included excluding felons from possessing firearms, as did this court recently in *Awkerman*.  *Awkerman v. Illinois State Police*, 2023 IL App (2d) 220434, ¶ 52 (citing *Jackson*, 69 F.4th at 501-06; *United States v. Rahimi*, 61 F.4h 443, 452 (5th Cir. 2023), *cert. granted*, No. 22-915, ___U.S. ___, ___S. Ct. ___, 2023 WL 4278450 (U.S. June 20, 2023) (distinguishing between disarming a person pursuant to a civil order relating to domestic violence from convicted

---

See, *e.g.*, *People v. Williams*, 204 Ill. 2d 191, 206 (2003) ("Judicial *dicta* have the force of a determination by a reviewing court and should receive dispositive weight in an inferior court."); *People v. Montgomery*, 2016 IL App (1st) 142143, ¶ 14 (opting to follow the *dicta* set forth in *Heller*).

felons subject to the longstanding prohibition on the possession of firearms that exclude them from the second amendment's scope). Indeed, this position was also accepted by the First District appellate court in *People v. Brooks*, 2023 IL App (1st) 200435, ¶¶ 90-105. There, the court considered and rejected the defendant's as-applied challenge to the armed habitual criminal statute, raising identical arguments to those defendant raises here. *Id.* The court determined, under the second step in *Bruen*, that founding-era historical records and Supreme Court precedent provide historical underpinnings for our General Assembly's prohibition of firearm possession by twice-convicted felons, even if the convictions were for nonviolent felonies. *Id.*

¶ 60 Finally, defendant cites *Range v. Attorney General*, 69 F.4th 96 (3d Cir. 2023) (*en banc*) and *United States v. Bullock*, 2023 WL 4232309, *2 (S.D. Miss. June 28, 2023), to support his arguments. We disagree that either should alter our conclusion here, note that neither decision is binding on us, and, further, agree with the court in *Baker*, where it pointed out that *Range* concerned disarming those with only *misdemeanor* convictions (and, thus, does not apply to defendant), and that *Bullock* is a district court decision, already subject to a pending appeal, which is strongly critical of the Supreme Court and, as such, does not particularly aid our analysis. See *Baker*, 2023 IL App (1st) 220328, ¶¶ 38-39.

¶ 61                                          III. CONCLUSION

¶ 62 For the reasons stated, we affirm the judgment of the circuit court of Lake County.

¶ 63 Affirmed.