NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2024 IL App (4th) 240315-U

NO. 4-24-0315

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
September 3, 2024
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Tazewell County |
| LUCAS S. THOMAS, | ) | No. 22CF538 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Christopher R. Doscotch, |
| | ) | Judge Presiding. |

PRESIDING JUSTICE CAVANAGH delivered the judgment of the court.
Justices Steigmann and Grischow concurred in the judgment.

**ORDER**

¶ 1     *Held*: The appellate court affirmed, finding the Illinois armed habitual criminal statute
         does not violate the United States Constitution.

¶ 2     In November 2023, defendant, Lucas S. Thomas, was sentenced to 19 years'
imprisonment following his guilty plea to being an armed habitual criminal (720 ILCS
5/24-1.7(a) (West 2022)). On appeal, defendant argues the armed habitual criminal statute
violates the second amendment (U.S. Const., amend. II) on its face pursuant to the United States
Supreme Court's decision in *New York State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022).
We affirm.

¶ 3                                I. BACKGROUND

¶ 4     In October 2022, the State charged defendant by indictment with (1) being an
armed habitual criminal (720 ILCS 5/24-1.7(a) (West 2022)) for possessing a firearm after

having been convicted of residential burglary in Woodford County case No. 08-CF-82 and unlawful possession of a weapon by a felon in Peoria County case No. 11-CF-333; (2) unlawful possession of a weapon by a felon (*id.* § 24-1.1(a)) for possessing said firearm after having been convicted in Peoria County case No. 11-CF-333; (3) aggravated domestic battery (*id.* § 12-3.3(a-5)) for intentionally strangling a family or household member; (4) aggravated battery (*id.* § 12-3.05(f)(1)) for holding a gun, a deadly weapon, to the head of another and thereby making contact of an insulting or provoking nature; (5) domestic battery (*id.* § 12-3.2(a)(1)) for causing bodily harm by striking a family or household member; and (6) resisting a peace officer (*id.* § 31-1)) for refusing to place his hands behind his back, tensing up, and struggling with an arresting officer, thereby causing the officer to be injured.

¶ 5        In July 2023, defendant entered into a partially negotiated plea agreement wherein he pleaded guilty to the armed habitual criminal charge. In exchange, the State dismissed the remaining charges, agreed not to file any uncharged pending cases against defendant, and agreed not to refer any cases regarding defendant for federal prosecution. However, the State reserved the right to utilize any uncharged conduct and the dismissed charges in aggravation at sentencing. The State proffered a factual basis, citing defendant's aforementioned felony convictions from Woodford and Peoria counties. Following the issuance of a search warrant, officers discovered a handgun in defendant's bedroom. Additionally, a search of defendant's phone revealed a photograph of him holding said handgun. The trial court accepted defendant's plea as knowing and voluntary.

¶ 6        A sentencing hearing was held in November 2023. A presentence investigation report (PSI) was admitted without objection. According to the PSI, defendant had been convicted

of residential burglary in 2008 and twice convicted of unlawful possession of a weapon by a felon in 2011 and 2015, respectively.

¶ 7        The State introduced into evidence the video showing defendant's arrest and the recovery of the firearm and the testimony of detective Robert Vester of the East Peoria Police Department. Vester testified, among other things, to discovering the firearm in defendant's bedroom, to investigating defendant for selling stolen all-terrain vehicles, and that, according to defendant, he had purchased the firearm at issue in St. Louis, Missouri, for self-defense.

¶ 8        Defendant presented letters from family and friends in mitigation. A neighbor and friend testified defendant was not a violent person and only obtained the firearm for self-defense.

¶ 9        Defendant gave a statement in allocution wherein he acknowledged his mistake in purchasing the firearm. He argued a convicted felon should not lose his rights under the second amendment and contended he never used or brandished the firearm but was the victim of two other individuals threatening him with a firearm.

¶ 10        The trial court considered the PSI, evidence presented in aggravation and mitigation, defendant's statement in allocution, arguments from the parties, the statutory and nonstatutory factors in aggravation and mitigation, the history and character of defendant, and the seriousness of the offense in light of the objective of restoring defendant to useful citizenship. The court noted the firearm had a "40-round extended clip" and a "green laser tag site,"— characteristics typically not found on a weapon used merely for self-defense. Defendant interjected that those items came with the weapon when he bought it. The court rebutted that defendant, nonetheless, bought it that way. The court sentenced defendant to 19 years' imprisonment. Defendant filed a motion to reconsider sentence, arguing the court failed to

consider certain statutory factors in mitigation and that his sentence was excessive. The court denied the motion.

¶ 11        This appeal followed.

¶ 12                                II. ANALYSIS

¶ 13        Defendant claims the armed habitual criminal statute is unconstitutional on its face as violative of the second amendment. See *In re N.G.*, 2018 IL 121939, ¶ 49 ("Defendants convicted under a facially unconstitutional statute may challenge the conviction at any time, even after a guilty plea, because the state or government had no power to impose the conviction to begin with."). We disagree. The Criminal Code of 2012 (Code) (720 ILCS 5/1-1 *et seq.* (West 2022)) provides as follows:

> "(a) A person commits the offense of being an armed habitual criminal if he or she receives, sells, possess, or transfers any firearm after having been convicted a total of 2 or more times of any combination of the following offenses:
>
>> (1) a forcible felony as defined in Section 2-8 of this Code;
>>
>> (2) unlawful use of a weapon by a felon; aggravated unlawful use of a weapon; aggravated discharge of a firearm; vehicular hijacking; aggravated vehicular hijacking; aggravated battery of a child as described in Section 12-4.3 or subdivision (b)(1) of Section 12-3.05; intimidation; aggravated intimidation; gunrunning; home invasion; or aggravated battery with a firearm as described in Section 12-4.2 or subdivision (e)(1), (e)(2), (e)(3), or (e)(4) of Section 12-3.05; or

(3) any violation of the Illinois Controlled substances Act or the Cannabis Control Act that is punishable as a Class 3 felony or higher." 720 ILCS 5/24-1.7 (West 2022).

¶ 14 Accordingly, defendant's stipulated convictions of residential burglary (a forcible felony pursuant to section 2-8 of the Code (*id.* § 2-8)) in Woodford County case No. 08-CF-82 and unlawful possession of a weapon by a felon in Peoria County case No. 11-CF-333 were qualifying convictions under the armed habitual criminal statute.

¶ 15 Defendant relies on the United States Supreme Court's decision in *Bruen*. In *Bruen*, the Supreme Court held, "When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct," and the government "must then justify its regulation by demonstrating that [the regulation] is consistent with the Nation's historical tradition of firearm regulation." *Bruen*, 597 U.S. at 24 (2022).

¶ 16 In response to defendant's facial challenge, the State cites numerous appellate court decisions relevant to the issue on appeal: *People v. Baker*, 2023 IL App (1st) 220328, ¶¶ 37-39 (finding *Bruen* did not apply to the defendant's as applied constitutional challenge under the second amendment of the unlawful use of a weapon by a felon statute); *People v. Kelley*, 2024 IL App (1st) 230569, ¶¶ 14-22 (finding the armed habitual criminal statute did not violate the second amendment pursuant to *Bruen*); *People v. Gross*, 2024 IL App (2d) 230017-U, ¶¶ 19-29 (finding *Bruen* did not apply to the defendant's as applied challenge to the unlawful possession of a weapon by a felon statute); *People v. Echols*, 2024 IL App (2d) 220281-U, ¶¶ 143-158 (finding *Bruen* did not apply to the defendant's as applied challenge to the unlawful possession of a weapon by a felon statute); *People v. Smith*, 2023 IL App (2d) 220340-U, ¶¶ 51-60 (finding the armed habitual criminal statute did not violate the second amendment

pursuant to *Bruen*); *People v. Smith*, 2023 IL App (4th) 220958-U, ¶¶ 18-22 (finding the firearm owner's identification card requirement constitutional post-*Bruen*); *People v. Boyce*, 2023 IL App (4th) 221113-U, ¶¶ 11-16 (finding *Bruen* did not apply to the defendant's facial constitutional challenge under the second amendment of the unlawful use of a weapon by a felon statute).

¶ 17        Defendant counters that the cases cited by the State were wrongly decided and notes the appellate court in *People v. Brooks*, 2023 IL App (1st) 200435, and *People v. Travis*, 2024 IL App (3d) 230113, found the second amendment's plain language presumptively protected convicted felons. Furthermore, the cases cited by the State were all decided without the benefit of the Supreme Court's decision in *United States v. Rahimi*, 602 U.S. ___, 144 S. Ct. 1889 (2024).

¶ 18        In *Brooks*, the defendant was convicted of being an armed habitual criminal. *Brooks*, 2023 IL App (1st) 200435, ¶ 1. On appeal, the defendant contended the armed habitual criminal statute as applied to him "impermissibly criminalized his simple possession of a firearm exclusively on the basis of his two prior nonviolent felony convictions." *Id.* ¶ 55. Following the framework from *Bruen*, the court in *Brooks* first considered whether the plain language of the second amendment protected the defendant's right to keep and bear arms. *Id.* ¶¶ 69, 79-87. The *Brooks* court concluded the defendant had been convicted under the armed habitual criminal statute for possessing a firearm after having been twice convicted of two nonviolent felonies. *Id.* ¶ 86. After observing the Supreme Court, in *District of Columbia v. Heller*, 554 U.S. 570, 582 (2008), held "to keep arms" simply meant to "have weapons," the *Brooks* court reasoned to "have," defined as "to be in possession of," meant the second amendment's plain language presumptively protected the defendant's conduct of possessing a firearm. (Internal quotation

marks omitted.) *Brooks*, 2023 IL App (1st) 200435, ¶ 87. The court then went on to determine the armed habitual criminal statute was consistent with the nation's tradition of firearm regulation. *Id.* ¶ 90.

¶ 19    The court in *Travis*, adopted the reasoning in *Brooks* and found "the second amendment's plain language does not exclude felons." *Travis*, 2024 IL App (3d) 230113, ¶ 26. Similarly, the *Travis* court also concluded the armed habitual criminal statute was consistent with the nation's tradition of firearm regulation. *Id.* ¶ 33.

¶ 20    In *Rahimi*, the defendant was charged with possessing a firearm while subject to a domestic violence restraining order. *Rahimi*, 602 U.S. __, 144 S. Ct. at 1895. The court noted, where "a restraining order contains a finding that an individual poses a credible threat to the physical safety of an intimate partner, that individual may—consistent with the Second Amendment—be banned from possessing firearms while the order is in effect." *Id.* at 1896. Moreover, "our Nation's firearm laws have included provisions preventing individuals who threaten physical harm to others from misusing firearms." *Id.* The court went on to clarify that "the Second Amendment permits more than just those regulations identical to ones that could be found in 1791." *Id.* at 1897-98. "A court must ascertain whether the new law is 'relevantly similar' to laws that our tradition is understood to permit." *Id.* at 1898. The *Rahimi* court rejected the notion that the defendant could be disarmed "simply because he is not 'responsible.' " *Id.* at 1903. The court noted that the *Heller* and *Bruen* decisions had used the term "responsible" to "describe the class of ordinary citizens who undoubtedly enjoy the Second Amendment right," but the term was never defined to reveal those who would be considered "not 'responsible.' " *Id.*

¶ 21    In essence, defendant asks that we, like the courts in *Brooks* and *Travis*, find his mere possession of a firearm was presumptively protected by the second amendment. Then,

unlike in *Brooks* and *Travis*, but following guidance from *Rahimi*, he asks us to find the armed habitual criminal statute is inconsistent with the nation's tradition of firearm regulation, and, thus, unconstitutional. For the reasons that follow, we are unpersuaded by defendant's arguments on appeal. See *Insurance Benefit Group, Inc. v. Guarantee Trust Life Insurance Co.*, 2017 IL App (1st) 162808, ¶ 44 (stating the "defendant, as the appellant, bears the burden of persuasion as to [his] claim of error").

¶ 22        This court, in *Boyce*, 2023 IL App (4th) 221113-U, ¶ 12, stated:

" 'The constitutionality of a statute is analyzed under well-settled principles. Statutes are presumed constitutional, and to rebut that presumption, the party challenging a statute's constitutionality has the burden of establishing a clear violation. [Citation.] A party raising a facial challenge to a statute faces a particularly heavy burden. [Citation.] A statute will be deemed facially unconstitutional only if there is no set of circumstances under which the statute would be valid. [Citation.] The particular facts related to the challenging party are irrelevant. [Citation.] If it is reasonably possible to construe the statute in a way that preserves its constitutionality, we must do so.' " (quoting *People v. Bochenek*, 2021 IL 125889, ¶ 10).

¶ 23        In *Boyce*, we cited *Baker*, 2023 IL App (1st) 220328, ¶ 37, for the proposition that "[t]he *Bruen* Court could not have been more clear that its newly announced test applied only to laws that attempted to regulate the gun possession of law-abiding citizens, and not felons like [the] defendant." (Internal quotation marks omitted.) *Boyce*, 2023 IL App (4th) 221113-U, ¶ 14. *Bruen* specifically upheld an earlier statement from *Heller* that courts should not " 'cast doubt on longstanding prohibitions on the possession of firearms by felons.' " *Bruen*, 597 U.S. at 81

(Kavanaugh, J., concurring, joined by Roberts, C.J.) (quoting *Heller*, 554 U.S. at 626). We find nothing in defendant's arguments that would persuade us to believe that previous decisions— including our own—finding *Bruen* does not apply to felons were incorrect. As a convicted felon, *Bruen* does not apply to defendant. See, *e.g.*, *Baker*, 2023 IL App (1st) 220328, ¶ 37; *Boyce*, 2023 IL App (4th) 221113-U, ¶ 16; *People v. Smith*, 2023 IL App (2d) 220340-U, ¶ 57; *People v. Kelley*, 2024 IL App (1st) 230569, ¶ 17; *People v. Langston*, 2023 IL App (4th) 230162-U, ¶ 19; *People v. Leonard*, 2024 IL App (4th) 230413-U, ¶ 15.

¶ 24    Additionally, *Rahimi* does not help defendant here because as the Supreme Court explained, "*Heller* never established a categorical rule that the Constitution prohibits regulations that forbid firearm possession in the home. In fact, our opinion stated that many such prohibitions, like those on the possession of firearms by 'felons and the mentally ill,' are 'presumptively lawful.' " *Rahimi*, 602 U.S. __, 144 S. Ct. at 1902 (quoting *Heller*, 554 U.S. at 626, 627 n.26). Thus, *Rahimi* does not support the proposition defendant propounds that he is presumptively protected under the second amendment; to the contrary, the armed habitual criminal statute prohibiting defendant, a convicted felon, from possessing a firearm is presumptively lawful. *Id.* Accordingly, defendant has failed to show the armed habitual criminal statue is facially unconstitutional.

¶ 25                                    III. CONCLUSION

¶ 26    For the reasons stated, we affirm the trial court's judgment.

¶ 27    Affirmed.