2024 IL App (2d) 230017-U
No. 2-23-0017
Order filed April 19, 2024

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of McHenry County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 21-CF-369 |
| MARCUS D. GROSS, | ) ) | Honorable James S. Cowlin, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE MULLEN delivered the judgment of the court.
Justices Hutchinson and Jorgensen concurred in the judgment.

**ORDER**

¶ 1    *Held*:  Defendant's conviction of possession of firearm ammunition without a FOID card must be vacated pursuant to one-act, one-crime doctrine; defendant's conviction of unlawful possession of a weapon by a felon does not offend second amendment as applied to defendant.

¶ 2                          I. INTRODUCTION

¶ 3    Following a bench trial in the circuit court of McHenry County, defendant, Marcus Gross, was convicted of unlawful possession of a weapon by a felon (720 ILCS 5/24-1.1(a) (West 2020)); possession of firearm ammunition without a Firearm Owner's Identification Card (FOID card) (720 ILCS 65/2(a)(2) (West 2020)); and driving while his license was suspended (625 ILCS 5/6-

303(a) (West 2020)) (the latter conviction is not at issue in this appeal). Defendant now appeals, raising three arguments. First, he argues that the statute defining unlawful possession of a weapon by a felon is unconstitutional as applied to him. Second, he contends that the Firearm Owner's Identification Act (720 ILCS 65/0.01 *et seq.* (West 2020)) is facially unconstitutional. Third, he argues that his FOID card conviction must be vacated on one-act, one-crime principles. See *People v. King*, 66 Ill. 2d 551, 566 (1977). For the reasons that follow, we vacate in part and affirm in part.

¶ 4    Before proceeding further, we note our agreement with the State's concession that defendant's convictions of unlawful possession of a weapon by a felon and misdemeanor possession of firearm ammunition without a FOID card cannot both stand under the one-act, one-crime doctrine, as both are based on the possession of the same 9-millimeter bullets. See *People v. Quinones*, 362 Ill. App. 3d 385, 397 (2005). This doctrine holds that multiple offenses may not be based upon "precisely the same physical act." *People v. Johnson*, 237 Ill. 2d 81, 97 (2010). "Thus, if a defendant is convicted of two offenses based upon the same single physical act, the conviction for the less serious offense must be vacated." *Id*. Since we affirm defendant's conviction of unlawful possession of a weapon by a felon, his conviction based on not having a FOID card must be vacated. We further note that this moots defendant's second argument concerning the constitutionality of the Firearm Owner's Identification Act. See *People v. Scott*, 2016 IL App (1st) 141456, ¶ 32. Accordingly, we will confine our analysis to defendant's first argument.

¶ 5                                   II. BACKGROUND

¶ 6    Defendant's bench trial commenced on October 20, 2022. The State first called Officer Nicholas Clesceri of the McHenry County Sheriff's Office. Clesceri testified that on May 18,

2021, at about 11 a.m., he and his partner (Deputy Keith Sosnowski) were driving in an unmarked vehicle. They were "checking high traffic drug areas," which included the Super 8 motel in Crystal Lake. They observed a black Dodge sedan turn onto the roadway, and they noted "that it had damage on [its] side panels." They "ran the license plate, and it was determined that the registered owner had a suspended license." The car "veered off to the left a little bit over the double yellow line and stopped, waiting for oncoming traffic." It then pulled into a 7-Eleven parking lot and parked.

¶ 7    Clesceri testified that he and Sosnowski approached the car. Defendant was in the driver seat and Nicole Evertsen was in the passenger seat. They noted an odor of "raw or fresh cannabis" emanating from the car. The officers also noted "a medical cannabis container that was open in the center console with ashes in it." They asked the occupants to step out of the vehicle and then conducted a search. In the front portion of the car, they located a wallet that contained defendant's Social Security card and a key for a safe. There was a "small SentrySafe" on the back seat. Clesceri could smell an odor of fresh cannabis coming from the safe. He unlocked the safe with the key found in defendant's wallet. Inside the safe, Clesceri found "numerous empty cannabis packages that contained little trace amounts of cannabis and residual amount of cannabis in the safe itself" and "a single metal magazine for a 9-millimeter pistol, which contained three 9-millimeter live rounds." While speaking with defendant, defendant stated that he "believed" he had a felony conviction but that it may have occurred while he was a juvenile.

¶ 8    Defendant was placed in handcuffs following the discovery of the ammunition, and he was read his *Miranda* warnings. Clesceri asked "where the magazine came from." Defendant replied that "he was holding it for a friend or holding it for someone." Defendant admitted that he did not have a FOID card. Defendant was then transported to the McHenry County Jail.

¶ 9    On cross-examination, Clesceri agreed that he had no knowledge that defendant ever touched the magazine or how it got into the safe.  He also did not know how the key to the safe got into defendant's wallet.  On redirect-examination, he stated that the wallet where the key was found was of the sort that a man would carry.

¶ 10    The State next called Officer Steve Howard, a corrections officer with the McHenry County Sheriff's Department.  He testified that all telephone calls made by inmates are recorded.  He provided to the State's Attorney's Office a recording of all calls made by defendant between May 18, 2021, and May 21, 2021.  On cross-examination, Howard acknowledged that in one of the calls, defendant referred to the safe recovered from the vehicle as "my safe."

¶ 11    The State admitted a certified copy of defendant's 2018 felony conviction of possession of a stolen vehicle and rested.   Defendant then called Avalon Gross, defendant's brother.  Avalon testified that he has a FOID card.  The ammunition recovered from defendant's car belonged to Avalon.  Defendant had given Avalon a ride home from the range "about two days prior" to defendant's arrest.   Avalon stated that he owns a 9-millimeter pistol that uses the type of rounds found in defendant's vehicle.  An emergency arose, and Avalon had to leave.  He left the ammunition in the safe in his brother's car.  Defendant never touched the magazine.  He placed the ammunition in the safe while in the parking lot of the shooting range, and he left the gun in the motel room where defendant was staying.

¶ 12    Defendant then testified.  He stated that two days before he was arrested, Avalon called him because he needed a ride from the shooting range in Mokena.  Defendant agreed to pick him up. When defendant got to the range, Avalon placed a magazine inside the safe and told defendant not to touch it.  Avalon locked the safe and gave defendant the key.  They drove to the motel in Crystal Lake where defendant was staying.  Avalon had to leave and left his gun in defendant's

room. Defendant never touched the gun. From the time his brother left until the time he was arrested, defendant never touched or opened the safe in the car. When the police opened the safe, defendant acknowledged that he knew the bullets were in it, but he never stated that he was holding them for someone.

¶ 13 On cross-examination, defendant testified that he kept a safe in the car to lock up his jewelry. He had been staying at the motel in Crystal Lake for about four days at the time of his arrest. He acknowledged that the wallet the police recovered from his car belonged to him. He knew that the bullets were in the safe.

¶ 14 Defendant then rested, and the State presented no rebuttal. The trial court found defendant guilty of all counts. It first noted that defendant had been convicted of "receiving or possession of a stolen vehicle" in 2018, which was a felony. It then observed that it was the State's burden to prove beyond a reasonable doubt that defendant knew of the presence of the ammunition and that he had immediate and exclusive control over the area where it was found. It stated that "the facts are not really in dispute." It found that Avalon's ownership of the ammunition did not overcome the fact that it was in defendant's possession. Thus, the court found defendant guilty of unlawfully possessing the ammunition. It then noted that defendant did not have a FOID card and found him guilty on that count as well. Finally, it found defendant guilty of driving while his license was suspended. Defendant now appeals.

¶ 15                                  III. ANALYSIS

¶ 16 Given the State's concession that defendant's conviction of possession of firearm ammunition without a FOID card must be vacated pursuant to the one-act, one-crime doctrine, we are left to consider one issue: whether the statute criminalizing the unlawful possession of a weapon by a felon (720 ILCS 5/24-1.1(a) (West 2020)) is unconstitutional. Defendant asserts that,

under the United States Supreme Court's decision in *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022), his conviction for unlawful possession of a firearm by a felon violates the second amendment. We conclude that it does not, and we therefore affirm.

¶ 17    The constitutionality of a statute presents a question of law subject to *de novo* review. *People v. Devenny*, 199 Ill. 2d 398, 400 (2002). Statutes are presumed constitutional, and the burden to establish a statute's invalidity is on the party raising the challenge. *People v. Howard*, 2017 IL 120443, ¶ 24. A court has a duty to construe a statute, if reasonably possible, so as to uphold its validity. *People v. Chairez*, 2018 IL 121417, ¶ 15. Defendant raises an as-applied challenge to the statute's constitutionality. An as-applied challenge requires a showing that the statute violates the constitution as it applies to the facts and circumstances of the challenging party. *People v. Garvin*, 219 Ill. 2d 104, 117 (2006).

¶ 18    The State asserts that defendant has forfeit this issue. It is true that defendant is raising this argument for the first time before this court. While a facial constitutional challenge avoids procedural bars because the statute is alleged to be void and unenforceable under any set of facts, (*Garvin*, 219 Ill. 2d at 117), an as-applied challenge is dependent on the particular circumstances and facts of the individual defendant or petitioner. *People v. Thompson*, 2015 IL 118151, ¶ 37. Regarding the latter, courts have held that "it is paramount that the record be sufficiently developed in terms of those facts and circumstances for purposes of appellate review." *Id.* Hence, where the facts underlying an as-applied challenge do not appear in the record, the challenge is forfeited despite being constitutional in nature. See *Id.* ¶¶ 38-39. In some limited circumstances, an as-applied challenge may be raised on appeal for the first time if the record is sufficiently developed to support the challenge. *People v. Harris*, 2018 IL 121932, ¶ 43. The State asserts that defendant has forfeited his claim that he is a nonviolent felon because, "[o]ther than naming the offense and

stating that an act of violence is not an element, defendant provides no record to support his contention that his felony offense was 'nonviolent.' " We disagree in the present context. It is true that we do not know the underlying facts of defendant's felony conviction. Defendant's argument, however, is legal in nature and not dependent upon the underlying facts of his earlier conviction. That is, the question before us is whether it is constitutionally permissible to restrict a person from possessing a firearm where that person has been convicted of a felony that does not have a violent act as one of its elements. We will therefore address defendant's argument. See *People v. Holman*, 2017 IL 120655, ¶ 32, *overruled on other grounds by People v. Wilson*, 2023 IL 127666, ¶ 42.

¶ 19 Turning to the merits of this appeal, defendant argues that the application of section 24-1.1 of the Criminal Code of 2012 (Code) (720 ILCS 5/24-1.1(a) (West 2020))—the statute criminalizing the unlawful possession of a weapon by a felon—to him violates the second amendment of the United States Constitution (U.S. Const., amend. II). The second amendment provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const., amend. II. The second amendment "is fully applicable to the States." *McDonald v. City of Chicago*, 561 U.S. 742, 750 (2010). Defendant contends that section 24-1.1 is unconstitutional as applied to him under *Bruen*, 597 U.S. 1.

¶ 20 In *Bruen*, 597 U.S. at 17-18, the Supreme Court set forth a new test for evaluating laws that potentially implicate the second amendment. It began by recognizing that, since its decision in *District of Columbia v. Heller*, 554 U.S. 570 (2008), which held that the second amendment confers "an individual right to keep and bear arms" (*Id.* at 595), lower courts had developed a two-pronged analysis to determine whether statutes regulating firearms ran afoul of the second

amendment. *Bruen*, 597 U.S. at 17. The first prong requires "a textual and historical inquiry" concerning whether the "challenged law imposes a burden on conduct falling within the scope of the second amendment guarantee." *Wilson v. County of Cook*, 2012 IL 112026, ¶ 41. If a court determines that the law burdens conduct falling within the scope of the amendment, the next step was to conduct an "inquiry into the strength of the government's justification for restricting or regulating the exercise of Second Amendment rights." *Ezell v. City of Chicago*, 651 F.3d 684, 703 (2011).

¶ 21    The *Bruen* Court rejected the means-ends balancing contemplated by the second step of this analysis. *Bruen*, 597 U.S. at 19. It left the first prong intact. *Id.* ("Step one of the predominant framework is broadly consistent with *Heller*, which demands a test rooted in the Second Amendment's text, as informed by history."). However, it articulated a new second prong: "the government must affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." *Id.* Thus, a court must first engage in a textual inquiry to determine if the conduct sought to be regulated falls within the ambit of the second amendment and, if it does, the court must then consider whether the regulation is "consistent with the Nation's historical tradition of firearm regulation." *Id.* at 24. Applying this test, we conclude that section 24-1.1 does not violate the second amendment.

¶ 22    We preliminarily note that the Supreme Court has expressly disavowed any intent to disturb laws restricting a felon's access to firearms. In *Heller*, the majority stated, "Although we do not undertake an exhaustive historical analysis today of the full scope of the Second Amendment, nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons ***." *Heller*, 554 U.S. at 626; see also *McDonald*, 561 at 786; *Bruen*, 597 U.S at 81 (Kavanaugh, J., joined by Roberts, C.J., concurring); *Bruen,* 554 U.S. at 72

(Alito, J., concurring). In light of this clear pronouncement, it is difficult to read the Supreme Court's recent second-amendment cases as holding that laws such as the one at issue here violate the second amendment. Defendant, however, characterizes these comments as *dicta*. In *People v. Montgomery*, 2016 IL App (1st) 142143, ¶ 14, the first district rejected a similar assertion and indicated that it would give effect to the Supreme Court's statement as judicial *dicta*. See also *United States v. Rozier*, 598 F. 3d 768, 770-71 n.6 (11th Cir. 2010) (stating that "to the extent that this portion of *Heller* limits the Court's opinion to possession of firearms by *law-abiding* and *qualified* individuals, it is not *dicta*" and that even "to the extent that this statement is [*dicta*], we shall still give it considerable weight." (Emphases in original.)). Like the first district, we, too, will heed this statement by the Supreme Court.

¶ 23    Turning to the first prong of the test set forth in *Bruen*, we must consider whether the plain language of the second amendment is implicated by section 24-1.1. Defendant is a felon. The second amend protects only "the right of *the people* to keep and bear Arms." (Emphasis added.) U.S. Const., amend. II. Thus, the question becomes whether defendant's status as a felon removes him from the class of "the people" that the second amendment protects. In *Heller*, 554 U.S. at 635, the court made clear that the second amendment protects "the right of *law-abiding*, responsible citizens to use arms in defense of hearth and home." (Emphasis added.) In *Bruen*, 597 U.S. at 71, while striking down a New York law regulating the possession of firearms, the Supreme Court stated that it "violate[d] the Fourteenth Amendment in that it prevent[ed] *law-abiding* citizens with ordinary self-defense needs from exercising their right to keep and bear arms." (Emphasis added.) Articulating the right recognized in *Heller* and *McDonald*, the *Bruen* court stated, "[T]he Second and Fourteenth Amendments protect the right of ordinary, law-abiding citizens to possess a handgun in the home for self-defense." *Id.* at 8-9. In fact, *Bruen* "characterized the holders of

second amendment rights as 'law-abiding citizens' no fewer than fourteen times." *People v. Brooks*, 2023 IL App (1st) 200435, ¶ 99.

¶ 24 Defendant counters that *Heller* stated that the term "the people" "unambiguously refers to all members of the political community, not an unspecified subset." *Heller*, 554 U.S. at 580 (quoting *United States v. Verdugo-Urquidez*, 494 U.S. 259, 265 (1990)). We note that this statement was made in a context that was very different from that currently before this court. In this section of *Heller*, the court was considering whether the second amendment—in light of its prefatory statement of purpose concerning a "well regulated Militia"—conferred a right upon individual citizens rather than simply "protecting only the right to 'keep and bear Arms' in an organized militia." *Id.* at 580-81. The court was not addressing whether an individual could remove oneself from the class of "the people" by having oneself adjudicated a felon. Thus, although this passage provides some, indirect support for defendant's position, we attach more significance to the Supreme Court's directly on-point statements, such as the following from *Heller*, 554 U.S. at 635, that the second amendment protects "the right of *law-abiding*, responsible citizens ***." We therefore hold that "the people" referenced in the second amendment are law-abiding citizens.

¶ 25 We further note that defendant's argument on this point is largely inconsistent with the jurisprudence of this state. Most recently, we upheld section 24-1.1 against a similar challenge in *People v. Echols*, 2024 IL App (2d) 220281-U, ¶ 142. Similarly, in *People v. Rush*, 2014 IL App (1st) 123462, ¶ 23, the court held that the defendant did not satisfy the first prong of the test in effect prior to *Bruen* (which was ultimately incorporated into the *Bruen* analysis) in that possession of a weapon by a felon was not conduct falling within the scope of the second amendment, explaining: "As our analysis has shown, the second amendment does not extend to firearm

possession by felons and defendant's argument must fail." Additionally, in *People v. Campbell*, 2014 IL App (1st) 112926, ¶ 60, the court held, "Accordingly, we hold felon-based firearm bans, like the [unlawful use of a weapon by a felon] and [aggravated habitual criminal] statutes, do not impose a burden on conduct falling within the scope of the second amendment." In *People v. Baker*, 2023 IL App (1st) 220328, ¶ 37, the court rejected a claim similar to the one that defendant advance here, explaining: "The *Bruen* Court could not have been more clear that its newly announced test applied only to laws that attempted to regulate the gun possession of 'law-abiding citizens' and not felons like [the] defendant." Defendant suggests that cases decided prior to *Bruen* lack precedential value. However, we note that to the extent such cases are based on the first prong of the test that developed following *Heller* but before *Bruen* (see *Bruen*, 597 U.S. at 17), they continue to be relevant because the first prong of that test is the same as the first prong of the test set forth by the Supreme Court in *Bruen* (*Bruen*, 597 U.S. at 19).

¶ 26    Moreover, we reject defendant's attempt to draw a distinction between violent felons and nonviolent felons for second amendment purposes, which brings us to the second prong of the test set forth in *Bruen*. Defendant argues that the section 24-1.1 of the Code, as applied to him, is not "analogous to and consistent with historically accepted restrictions on firearms possession." He asserts, "[T]here is no historical tradition for prohibiting non-violent persons from possessing firearms." Defendant points out that the State must establish that such historical precedent exists. *Bruen*, 597 U.S. at 17. Further, the State may not rely on "historical outliers" to meet this burden. *Id.* at 30. The Court emphasized that "analogical reasoning under the Second Amendment is neither a regulatory straightjacket [*sic*] nor a regulatory blank check." *Id*. Assuming, *arguendo*, that defendant's conduct fell within the scope of the second amendment, section 24-1.1 nevertheless passes constitutional muster.

¶ 27     Initially, we note that we considered this question in *Echols*, 2024 IL App (2d) 220281-U, ¶ 155, and held that a sufficient historical tradition existed such that laws prohibiting felons from possessing weapons did not offend the second amendment.  We began by rejecting the distinction defendant attempts to draw here between those convicted of violent felonies and those convicted of felonies that do not have an element involving violence.  *Id.* ¶ 156.  We noted that neither *Heller* nor *Bruen* qualified the term "felon" or otherwise limited it to violent felons.  *Id.*; see also *Medina v. Whitaker*, 913 F.3d 152, 159 (D.C. Cir. 2019) (observing that "[f]elonies encompass a wide variety of non-violent offenses, and we see no reason to think that the [United States Supreme] Court meant 'dangerous individuals' when it used the word felon" in *Heller*).  Also, in *People v. Awkerman*, 2023 IL App (2d) 220434, ¶ 50-51, we found that disabling felons from possessing firearms is "consistent with this country's historical tradition of firearm regulation ***."  Moreover, we continued, numerous cases have rejected this distinction as well.  For example, in *Median v. Whitaker*, 913 F.3d 152, 159 (D.C. Cir. 2019), the court, discussing *Heller*, held, "Felonies encompass a wide variety of non-violent offenses, and we see no reason to think that the [United States Supreme] Court meant 'dangerous individuals' when it used the word felon."  In *People v. Brooks*, 2023 IL App (1st) 200435, ¶ 90, we upheld a challenge to the armed habitual criminal statute (720 ILCS 5/24-1.7 (West 2016)) similar to the one defendant raises here, holding that the State had carried its burden of "demonstrat[ing] that the armed habitual criminal statute is consistent with the nation's historical tradition of firearm regulation."  Accordingly, a sufficient historical tradition exists such that section 24-1.1 is not unconstitutional as applied to defendant due to his status as a felon.

¶ 28     We note defendant, after acknowledging that "the majority of the cases have found that the federal statute [banning felons from possessing firearms] is supported by the historical tradition of

the second amendment," calls our contention to some contrary authority. He cites *Range v. Attorney General of the United States*, 69 F.4th 96, 106 (3rd Cir. 2023) (*en banc*), pet. for cert. pending, No. 23-374, where the court concluded, "the Government has not shown that the Nation's historical tradition of firearms regulation supports depriving [the defendant] of his Second Amendment right to possess a firearm." We note that the *Range* court stated, "Our decision today is a narrow one" and that "the Government has not shown that our Republic has a longstanding history and tradition of depriving people like [the defendant] of their firearms." *Id.* "[P]eople like [the defendant]" in that case are people convicted of a misdemeanor punishable by in excess of two years imprisonment, which brought the defendant within the scope of the federal law prohibiting possession of a firearm by individuals convicted of certain offenses. *Id.* at 98. Hence, since it did not involve an actual felony conviction, *Range* is not strictly analogous to the instant case. See *Baker*, 2023 IL App (1st) 220328, ¶ 38. Defendant also points to *United States v. Rahimi*, 59 F.4th 163 (5th Cir. 2023) (*withdrawn and superseded by United States v. Rahimi*, 61 F.4th 443 (5th Cir. 2023), cert. granted, 143 S. Ct. 2688); however, that case involved an order of protection rather than a felony conviction and is therefore of limited guidance here. Similarly, *United States v. Harrison*, 654 F.Supp.3d 1191 (W.D. Okla. 2023), appeal pending, No. 23-6028, is distinguishable in that it held that the nation's historical tradition of firearm regulation did not encompass a ban on marijuana users possessing firearms. More importantly, as defendant admits, these cases represent a minority position.

¶ 29    In sum, we hold that as a felon, defendant is not a member of the class of individuals protected by the second amendment. That defendant's underlying felony did not involve violence is immaterial, as the Supreme Court drew no such distinction in *Heller*, *McDonald*, or *Bruen*. Moreover, assuming *arguendo* that he is a member of that class, section 24-1.1 is consistent with

the nation's historical tradition of firearm regulation.

¶ 30                                    IV. CONCLUSION

¶ 31    In light of the foregoing, we vacate defendant's conviction of possession of firearm ammunition without a FOID card and otherwise affirm.

¶ 32    Vacated in part and affirmed in part.