No. 2-24-0327
Order filed November 7, 2025

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT
_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Kane County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 22-CF-18 |
| RONALD P. RODGERS, | ) ) ) | Honorable Salvatore LoPiccolo Jr., |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

PRESIDING JUSTICE KENNEDY delivered the judgment of the court.
Justices Hutchinson and Mullen concurred in the judgment.

**ORDER**

¶ 1   *Held*: Defendant's seven-year sentence is not excessive for his conviction of unlawful possession of a weapon by a felon. Further, the statute establishing the offense of unlawful possession of a weapon by a felon is not unconstitutional. Therefore, we affirm.

¶ 2   Following a bench trial, defendant, Ronald P. Rodgers, was convicted of unlawful possession of a weapon by a felon (UPWF) (720 ILCS 5/24-1.1(a) (West 2020)). On this direct appeal, he raises two issues: (1) whether his sentence of seven years is excessive, and (2) whether the statute establishing UPWF (720 ILCS 5/24-1.1(a) (West 2020)) is unconstitutional. For the following reasons, we affirm.

¶ 3                                    I. BACKGROUND

¶ 4      On April 5, 2022, a grand jury indicted defendant of two counts of UPWF (Counts I and II) (720 ILCS 5/24-1.1(a) (West 2020)) and one count of possession of a firearm without a Firearm Owner's Identification (FOID) Card (Count III) (430 ILCS 65/2(a)(1) (West 2020)). All three counts were alleged to have occurred in Kane County on January 2, 2022.

¶ 5      Count I alleged possession of a handgun and Count II alleged possession of firearm ammunition. For both Counts I and II, the indictment alleged that defendant had been convicted of the following felonies: possession of a firearm with a defaced serial number (No. 20-CR-0182701 (Cir. Ct. Cook County)) and aiding or abetting a stolen motor vehicle (No. 20-CR-0294801 (Cir. Ct. Cook County)).

¶ 6                                    A. Bench Trial

¶ 7      Defendant's bench trial commenced on July 7, 2023. The State's first witness was Parole Agent Jeffery White, who testified as follows. On January 2, 2022, he visited defendant's address in Elgin. Defendant was on mandatory supervised release (MSR), and White met with defendant at his apartment. The purpose of White's visit was a diversion review: an IDOC (Illinois Department of Corrections) warrant had been issued for defendant because he had not returned home within his allotted time.

¶ 8      White arrived with another parole officer, and defendant let them into the apartment. Defendant was handcuffed for officer safety. Defendant was in his boxers, so White asked him where his pants were. Defendant said they were in the bedroom, and White went to retrieve his pants. In the bedroom, White observed a pile of clothes in the middle of the floor, and he grabbed the first pair of pants that he saw. When White picked up the pants, he observed a firearm beneath

where the pants had been. The firearm was fully loaded. This prompted an immediate call to the Elgin police.

¶ 9     Nothing at the apartment indicated to White that another person lived there with defendant. The apartment had another bedroom, but nothing was in that bedroom; all the furniture and furnishings were in the one room with the pants and gun. The room with defendant's pants also contained defendant's wallet, ID, keys to the apartment, and two cell phones.

¶ 10     White's partner at the apartment was Parole Officer Joyce Verdeyen, who testified consistently with White's testimony. She testified that defendant had his ankle bracelet on, and the receiver for the bracelet was plugged into the apartment's living room wall. They collected the bracelet when they arrested defendant that day.

¶ 11     The State's final witness was Officer Richard Free with the City of Elgin, who testified as follows. On January 2, 2022, he responded to defendant's apartment with Officer Russell Nisivaco in response to a call by parole agents who had a subject in custody. Free met with the agents and observed defendant in their custody. The agents directed him to a bedroom, which had a mattress and clothes strewn about the floor. The other bedrooms in the apartment were bare. In the bedroom with the clothing, Nisivaco collected a Glock 19, nine-millimeter handgun. In the Glock was a 30-round magazine containing ammunition.

¶ 12     After calling its witnesses, the State introduced, and the court admitted, People's Exhibit 8, which was a certified copy of defendant's conviction in Cook County case number 20-CR-182701. The copy of conviction showed that, on July 28, 2020, defendant had pled guilty to possession of a firearm with a defaced serial number (720 ILCS 5/24-5(b) (West 2018)).

¶ 13     Following a continuance to August 23, 2023, defendant called Yamarciay Grant, who testified as follows. He had known defendant for more than 10 years; they were friends. Around

January 1, 2022, Grant was a leaseholder at defendant's apartment address, specifically defendant's unit number 7. Grant reviewed his lease, which began March 1, 2021, and ran until March 31, 2022. The other leaseholder was his then-girlfriend, Sammarion Dungey. He and Dungey had a "falling out" that resulted in him moving out of the apartment "[w]ay before December" of 2021. Dungey remained in the apartment after he left. Grant did not know when she moved out of the apartment, but she did move out at some point.

¶ 14    Around New Year's Day of 2022, Grant allowed defendant to stay at the apartment. Grant let defendant into the apartment, which had no furniture and "[o]ne bedroom [where] they left a bunch of crap in there." By "crap" he meant "[c]lothing, garbage. You name it, it was there." On cross-examination, Grant acknowledged that defendant had asked him to testify at his trial, and he answered that he had not seen a firearm in the bedroom with all the junk on the floor. He had not gone through any of the items on the floor.

¶ 15    The court then questioned Grant.[1] It asked whether there was a bed in the bedroom with all the clothes and trash, and he answered that there was an air mattress. Grant confirmed that defendant had arrived at the apartment in defendant's car and that the charger for defendant's electronic monitoring device was already in the apartment. Grant had signed for defendant to be at the apartment after speaking with defendant's parole officer. Grant acknowledged that he had been to the apartment at least once previously with defendant, when defendant would have left his electronic monitoring device at the apartment. Following Grant's testimony, the defense rested.

---

[1]The Report of Proceedings incorrectly indicates that defendant, not Grant, was responding to the court's questions. However, the court was clearly questioning Grant about defendant and the apartment.

¶ 16    On September 14, 2023, the trial court found that the State proved defendant guilty beyond a reasonable doubt on all three counts.

¶ 17                                    B. Sentencing

¶ 18    On November 16, 2023, the trial court held defendant's sentencing hearing. The State argued that the minimum sentence for UPWF was seven years because defendant had a prior qualifying felony conviction, namely, defacing identification marks of a firearm. It also argued that he had a history of criminal activity, and it asked for a 10-year sentence. It acknowledged that his three convictions in this case would merge.

¶ 19    Defense counsel asked that the court depart from the seven-year minimum, citing, among other things, defendant's willingness to better himself, his desire to support his family, and the fact that he did not cause any harm to others in this case. Counsel asked for a sentence between three and five years.

¶ 20    The trial court noted that the normal sentencing range for defendant's conviction of UPWF was 3 to 14 years, but defendant's predicate felony was possession of a defaced firearm, which increased the minimum-end of the range to 7 years. In reaching its sentencing decision, the court stated that it had considered the following: evidence at trial and at the sentencing hearing, the arguments of counsel, the presentence investigation report, defendant's statements in the presentence report and in allocution, factors in mitigation and aggravation, and defendant's rehabilitative potential.

¶ 21    In the trial court's opinion, defendant's offense was "not a minimum sentence type of offense. You were on parole when you committed this offense. You were on [an] electronic home monitoring device. And so, when I'm talking about minimum, I'm talking about 3 to 14. The three portion of it." The court continued that, as a convicted felon, defendant was not allowed to possess

a firearm or ammunition, and one of his prior convictions was for having a firearm with a defaced serial number. The court stated that, under these circumstances, the range was 7 to 14 years.

¶ 22　The trial court reviewed factors that would permit departure from the guidelines to impose a sentence otherwise authorized by law but found no substantial and compelling justification to depart from the seven-year minimum guideline. The court found that, although defendant was young (25 as of the sentencing hearing, and 23 as of commission of the instant case's offense, and 21 as of the predicate offense), he had gone to prison with an opportunity to rehabilitate and restart his life as a law abiding citizen, but instead he was found with a Glock handgun and extended magazine. The court noted that the predicate offense of possession of a defaced firearm was in conjunction with stealing a motor vehicle. Continuing with the factors, the court found that there was no evidence that defendant acted under duress or coercion in committing the predicate offense, as well as no evidence that defendant aided in the apprehension of another felon or testified truthfully in another person's felony prosecution. The court also found that defendant had an unaddressed substance abuse problem, and it believed that time in prison would allow him to address his substance abuse as well as continue his educational and vocational training. Accordingly, the court declined to depart from the guidelines and their seven-year minimum sentence.

¶ 23　The trial court sentenced defendant to seven years in the Department of Corrections on his conviction of UPWF (handgun). Defendant's convictions of UPWF (firearm ammunition) and possession of a firearm without a FOID card merged into his conviction of UPWF (handgun). Defendant's sentence was to be served at 50% and would also have 12 months of MSR.

¶ 24　On December 15, 2023, defendant moved to reconsider his sentence, arguing that his sentence violated the Illinois Constitution's Proportionate Penalties Clause (Ill. Const. 1970, art.

I, § 2), that the trial court erred in refusing to depart from the sentencing guidelines (730 ILCS 5/5-4.5-110 (West 2022)), that his sentence ignored available alternatives to assist in his rehabilitation, and that his sentence was not aligned with, *inter alia*, his criminal history, education, and family situation.

¶ 25    On May 17, 2024, the trial court heard the motion to reconsider sentence. At the hearing, defense counsel requested a reduction of defendant's sentence to five years. The court concluded that defendant's seven-year sentence was not excessive, and it denied the motion.

¶ 26    Defendant timely appealed.

¶ 27                                    II. ANALYSIS

¶ 28    Defendant raises two arguments on appeal: (1) His sentence of seven years' imprisonment is excessive, and (2) the UPWF statute is unconstitutional, both on its face and as applied to defendant. We address his arguments in turn.

¶ 29                                    A. Sentence

¶ 30    Defendant argues that the trial court abused its discretion in sentencing him to seven years' imprisonment for his conviction of UPWF. Although defendant acknowledges the statutory guidelines increasing the minimum sentencing range from three to seven years based on his predicate felony of possession of a defaced firearm, he argues that the court had discretion to depart from the guidelines. He further argues that his sentence was disproportionate to his offense, that the court failed to consider his rehabilitative potential, and that it failed to consider two mandatory factors in mitigation.

¶ 31    Trial courts have broad discretion in imposing criminal sentences, although such discretion is not without limitation. *People v. Stacey*, 193 Ill. 2d 203, 209 (2000). A reviewing court may not alter a defendant's sentence absent an abuse of discretion by the trial court. *People v. Alexander*,

239 Ill. 2d 205, 212 (2010); see Ill. S. Ct. R. 615(b)(4) (providing a reviewing court has authority to reduce a sentence on appeal). A trial court abuses its discretion where the sentence is " 'greatly at variance with the spirit and purpose of the law, or manifestly disproportionate to the nature of the offense.' " *Id.* (quoting *Stacey*, 193 Ill. 2d at 210).

¶ 32    A court does not have authority to impose a sentence that does not conform with statutory guidelines. *People v. White*, 2011 IL 109616, ¶ 20. Consequently, a court exceeds its authority when it imposes a lesser or a greater sentence than the statute mandates. *Id.*

¶ 33    The normal sentencing range for a defendant who commits UPWF while on MSR, is 3 to 14 years' imprisonment, except as provided for in section 5-4.5-110 of the Unified Code of Corrections (UCC) (730 ILCS 5/5-4.5-110) (West 2022)). 720 ILCS 5/24-1.1(e) (West 2020). Section 5-4.5-110 of the UCC applies to offenses committed on or after January 1, 2018, and before January 1, 2024 (730 ILCS 5/5-4.5-110(b)),[2] and it provided that, for the offense of UPWF, a person previously convicted of a qualifying predicate offense shall be sentenced within a range of 7 to 14 years (*id.* § 5-4.5-110(c)).

¶ 34    One of section 5-4.5-110's qualifying predicate offenses was "defacing identification marks of firearms under Section 24-5 or similar offense under the Criminal Code of 1961." 730 ILCS 5/5-4.5-110(a)(Y) (West 2022). Here, defendant was convicted of UPWF in 2023, and the record shows that one of his predicate offenses for UPWF was possession of a firearm with a defaced serial number in violation of section 24-5(b) of the Criminal Code of 2012 (720 ILCS

---

[2]Section 5-4.5-110 has been repealed. 730 ILCS 5/5/-4.5-110(e) ("This Section is repealed on January 1, 2024.").

5/24-1(b) (2018)). Thus, section 5-4.5-110's sentencing guidelines applied to him. 730 ILCS 5/5-4.5-110(c)(1) (West 2018).

¶ 35    However, section 5-4.5-110(d) provided for departure from its guidelines in the following circumstance:

> "[T]he court *may depart* form the sentencing guidelines provided in subsection (c) of this Section and impose a sentence otherwise authorized by law for the offense if the court, after considering any factor under paragraph (2) of this subsection (d) relevant to the nature and circumstances of the crime and to the history and character of the defendant, finds on the record *substantial and compelling justification* that the sentence within the sentencing guidelines would be unduly harsh and that a sentence otherwise authorized by law would be consistent with public safety and does not deprecate the seriousness of the offense." (Emphases added.) *Id.* § 5-4.5-110(d)(1).

The factors were as follows:

> "(A) the age, immaturity, or limited mental capacity of the defendant at the time of the commission of the qualifying predicate or current offense, including whether the defendant was suffering from a mental or physical condition insufficient to constitute a defense but significantly reduced the defendant's culpability;
>
> (B) the nature and circumstances of the qualifying predicate offense;
>
> (C) the time elapsed since the qualifying predicate offense;
>
> (D) the nature and circumstances of the current offense;
>
> (E) the defendant's prior criminal history;
>
> (F) whether the defendant committed the qualifying predicate or current offense under specific and credible duress, coercion, threat, or compulsion;

(G) whether the defendant aided in the apprehension of another felon or testified truthfully on behalf of another prosecution of a felony; and

(H) whether departure is in the interest of the person's rehabilitation, including employment or educational or vocational training, after taking into account any past rehabilitation efforts or dispositions of probation or supervision, and the defendant's cooperation or response to rehabilitation." *Id.* § 5-4.5-110(d)(2).

If a court were to depart from the sentencing guidelines, it would have been required to specify on the record the particular evidence, information, factor or factors, or other reasons that led to its departure, as well as to indicate which factor or factors led to departure on the sentencing order. *Id.* § 5-4.5-110(d)(3).

¶ 36 At the sentencing hearing, the trial court specifically addressed defendant's argument that it should depart from the seven-year minimum guideline pursuant to section 5-4.5-110(d) of the UCC, addressing each section 5-4.5-110(d)(2) factor to see if any substantial and compelling justification existed to support departure. Regarding factor (A), the court noted that defendant was 25 years old at the time of trial, 23 at the time of the commission of the UPWF offense, and 21 at the time of the commission of his predicate offense. It noted that defendant went to prison for the predicate offense and had a chance to rehabilitate himself but instead, while on MSR, was found in possession of a Glock handgun with an extended magazine. Thus, it rejected the first factor as a reason to deviate.

¶ 37 Next, the court did not find factor (B) justified departure, noting that the predicate offense of possession of a defaced firearm was combined with aiding in stealing a motor vehicle. Factor (C) did not justify departure either, as his current offense was only two years after the predicate offense, for which defendant had gone to prison. Related to factor (D), the court had found that

"[w]hile on parole, [defendant] was supposed to be on his best behavior" and was not supposed to possess a firearm or ammunition, but he did and had tried to hide it from the parole officers. For factor (E), the court reiterated that defendant's criminal history was recent (within two years of his current offense) and that prison had not changed his behavior.

¶ 38    Turning to factor (F), the trial court found no evidence before it that defendant committed the predicate offense under duress, coercion, threat, or compulsion. Likewise, for factor (G), there was no evidence that defendant had aided in the apprehension of another felon or testified in another prosecution. Finally, regarding factor (H), the court stated that defendant had an unaddressed substance abuse problem, and it believed prison would allow him to address the issue. It also believed that prison would allow him to continue educational or vocational training. Accordingly, it did not see departure from the guidelines in the interest of defendant's rehabilitation.

¶ 39    Defendant does not advance arguments specific to why the trial court erred in its examination of the factors that may permit departure from the seven-year minimum guideline. Instead, he mentions only that courts have discretion to depart from the sentencing guidelines under section 5-4.5-110(d)(2). Yet, as we have described above, the trial court considered each of the section 5-4.5-110(d)(2) factors on record, including factors related to defendant's age, rehabilitative potential, and the circumstances of his relevant offenses. Given the court's diligent adherence to the statute's requirements and its conclusions reasonably based on the record before it, we cannot say the trial court abused its discretion in choosing not to depart from the seven-year minimum guideline.

¶ 40    Under the applicable sentencing guidelines, the court had no authority to impose a sentence less than the seven years prescribed by the legislature (see *White*, 2011 IL 109616, ¶ 20), and,

accordingly, we cannot say his minimum sentence required by law was excessive. Therefore, we hold that the trial court did not abuse its discretion in imposing a seven-year sentence on defendant for his conviction of UPWF.

¶ 41                              B. Constitutionality of the Statute

¶ 42    Defendant argues that the UPWF statute is unconstitutional, both facially and as applied to him. He argues that, under the Supreme Court's decision in *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 567 U.S. 1 (2022), the UPWF statute violates the second amendment of the United State Constitution[3] because its permanent, flat ban on felons possessing firearms is inconsistent with the historical tradition of firearm regulation in the United States. Defendant continues that he is part of "the people" whose right to bear arms the second amendment protects. In addition, defendant contends that the UPWF statute violates the second amendment as applied to him because his felon status does not necessarily mean he is not law-abiding, his prior felony convictions were non-violent in nature, and the circumstances of his conviction for UPWF demonstrated that he is not a threat to the community.

¶ 43    We presume statutes are constitutional, and the party challenging the statute's constitutionality has the burden of rebutting that presumption by establishing a clear constitutional violation. *People v. Bochenek*, 2021 IL 125889, ¶ 10. A party raising a facial challenge must show that the statute is unconstitutional under any possible set of facts. *People v. Harris*, 2018 IL 121932, ¶ 38. Thus, the burden on a facial challenge is particularly heavy. *Bochenek*, 2021 IL 125889, ¶ 10. On the other hand, an as-applied challenge requires only that the party show that the

---

[3]"A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const., amend II.

statute is unconstitutional as it applies to the specific facts and circumstances of the party. *Harris*, 2018 IL 121932, ¶ 38. The constitutionality of a statute, whether challenged facially or as applied, is a question of law reviewed *de novo*. *People v. Rizzo*, 2016 IL 118599, ¶ 23.

¶ 44   Before addressing defendant's arguments on the constitutionality of the UPWF statute, we first check whether the issue is properly before us. As defendant acknowledges in his brief, he did not raise any issue related to the constitutionality of the UPWF statute in the trial court. Nevertheless, a facial challenge to the constitutionality of a statute may be raised at any time. *People v. Huff*, 2025 IL App (4th) 240762, ¶ 12 (citing *People v. Thompson*, 2015 IL 118151, ¶ 32 (explaining that when a statute is declared facially unconstitutional, it means the statute was constitutionally infirm from the moment of its enactment and is unenforceable)). Accordingly, defendant has not forfeited his facial challenge.

¶ 45   Facial and as-applied challenges are not interchangeable. *People v. Rizzo*, 2016 IL 118599, ¶ 24. Because an as-applied challenge is dependent on the specific facts and circumstances of the challenger, it is paramount for the purpose of appellate review that the record be sufficiently developed with respect to those facts and circumstances. *Harris*, 2018 IL 121932, ¶ 39; see also *People v. Mauricio*, 2021 IL App (2d) 190619, ¶ 15. Where a circuit court has held no evidentiary hearing and made no findings of fact, it is incapable of making an as-applied determination of unconstitutionality. *People v. Minnis*, 2016 IL 119563, ¶ 19. Furthermore, a reviewing court is not the arbiter of facts, and therefore this court should not, as a matter of first impression, consider whether a statute is constitutional as applied. *People v. Mosley*, 2015 IL 115872, ¶ 47 (quoting *In re Parentage of John M.*, 212 Ill. 2d 253, 268 (2004)).

¶ 46   Here, defendant's as-applied challenge initially appears dependent on facts outside the record. Specifically, he argues that he is not the type of dangerous person who the Founders would

have barred from possessing a firearm, based in part on the fact that his prior felony convictions were non-violent in nature. Although violence was not an essential element of either of defendant's predicate offenses for UPWF—possession of a defaced firearm and aiding or abetting a stolen motor vehicle, both of which were committed on January 10, 2020—the record, including the presentence investigation report, does not describe the facts or circumstances of the predicate offenses. Whether defendant was charged or convicted of an offense with an act of violence as an essential element is not the same as whether defendant posed a danger or threat. To wit, circumstances could reasonably support that defendant, who possessed a defaced handgun and assisted in the theft of a vehicle, is dangerous despite the elements of his predicate offenses, and therefore a dangerousness inquiry would require development of an evidentiary record not before us.

¶ 47    However, defendant's argument presupposes a difference between violent and non-violent felonies for purposes of the second amendment, and this court has held that whether a predicate felony is violent or non-violent in nature is irrelevant to a second-amendment analysis. *People v. Echols*, 2024 IL App (2d) 220281-U, ¶ 156. Importantly, felons are not part of the class of persons afforded second-amendment protections. *People v. Gross*, 2024 IL App (2d) 230017-U, ¶ 29; see also *People v. Rush*, 2014 IL App (1st) 123462, ¶¶ 23-25 (rejecting the defendant's as-applied challenge because the second amendment does not extend to firearm possession by felons). Whether the felony was violent or non-violent in nature is irrelevant. *Gross*, 2024 IL App (2d) 230017-U, ¶ 29; see *Medina v. Whitaker*, 913 F.3d 152, 159 (D.C. Cir. 2019) (rejecting the argument that non-dangerous felons have a right to bear arms). Accordingly, because defendant's argument is resolved as a matter of law, it is not forfeited, but it does fail.

¶ 48　　As defendant cannot show that the statute is unconstitutional as applied to him as felon, he necessarily cannot show that the statute is facially invalid. See *Jackson v. City of Chicago*, 2012 IL App (1st) 111044, ¶ 53 n.3 (explaining that a finding that the ordinance was unconstitutional as applied was dispositive of the facial challenge). Moreover, this court has recently heard and rejected a facial challenge to the UPWF statute. See, *e.g.*, *People v. Martinez*, 2024 IL App (2d) 230305-U, ¶¶ 18-49 (analyzing a facial challenge to the constitutionality of the UPWF statute and concluding that felons are not included in "the people" as covered by the second amendment, and that even if felons were included, the statute is consistent with the historical tradition of firearms regulation in the United States). We stand by what we have decided. See *Chicago Bar Ass'n v. Illinois Board of Elections*, 161 Ill. 2d 502, 510 (1994) (the doctrine of *stare decisis* ensures the law will not change erratically and contributes to the integrity of our constitutional system; courts should depart from what is decided only for articulable reasons, when experience and newly ascertained facts require change).

¶ 49　　　　　　　　　　　　　　III. CONCLUSION

¶ 50　　For the reasons stated, we affirm the judgment of the circuit court of Kane County.

¶ 51　　Affirmed.